STATE OF NORTH CAROLINA v. JACKIE EDWARD MASSEY

No. 552A84

(Filed 6 May 1986)

1. **Constitutional Law § 31— first degree murder—private detective denied—no abuse of discretion**

    The trial court did not abuse its discretion in a first degree murder prosecution by denying defendant's motion to hire a private investigator where defendant did not show a reasonable likelihood that the efforts of a private investigator would have materially assisted in the preparation and presentation of his case or that without such assistance he did not receive a fair trial. N.C.G.S. 7A-450 (1981); N.C.G.S. 7A-454 (1981).

2. **Constitutional Law § 31— first degree murder—statistician to examine jury venire denied—no abuse of discretion**

    The trial court did not abuse its discretion in a first degree murder prosecution by denying defendant's motion for funds to employ a statistician to review the jury venire over a substantial period of time. Defendant presented no evidence that the jury selection process was discriminatory or that a statistician would have resulted in a more favorable jury; defendant was in effect asking the court to appoint a statistician to go on a fishing expedition.

3. **Constitutional Law § 31— first degree murder—assistant counsel denied—no abuse of discretion**

    The trial court did not abuse its discretion in a first degree murder prosecution by denying defendant's motion for the appointment of an assistant counsel where there was no evidence that the case was so complex or plagued with other difficulties as to require the appointment of assistant counsel or that defense counsel handled the trial and appeal other than in a competent manner. N.C.G.S. 7A-450(b)(1) (Cum. Supp. 1985).

4. **Constitutional Law § 31— first degree murder—social psychologist and private psychiatrist denied—no error**

    The trial court did not abuse its discretion in a prosecution for first degree murder by denying defendant's motions to hire a social psychologist and a private clinical psychiatrist where defendant offered no evidence that a social psychologist or a clinical psychiatrist would have materially aided him in the preparation of his defense or that he would not otherwise receive a fair trial. Evidence that defendant was mildly retarded was not a sufficient basis to require the appointment of a private psychiatrist where defendant had already been examined by a psychiatrist at State expense and there was no serious contention that defendant's sanity at the time the offense was committed would be a significant factor at trial.

5. **Jury § 5.1— venire—statutory requirements for selecting not followed—indictment not quashed**

    The trial court did not err in a murder prosecution by denying defendant's motion to quash the petit jury and the indictment against him

State v. Massey

where the jury commissioners failed to strictly comply with the statutory requirements in preparing jury lists but all of the evidence tended to negate any corrupt intent, discrimination, or irregularities which affected the actions of the jurors actually drawn and summoned. N.C.G.S. 9-2, N.C.G.S. 9-2.1, N.C.G.S. 9-3, N.C.G.S. 9-5.

6. **Criminal Law § 91.1— continuance for further psychiatric examination—denied —no error**

The trial court did not err in a prosecution for murder by denying defendant's motion for a continuance so that his recently hired clinical psychologist could further evaluate defendant's mental condition where two months elapsed between the date defendant's final motion for the appointment of a psychiatrist was denied and the trial date; the psychologist testified in a manner favorable to defendant; and defendant made no serious contention that the testimony could have been more favorable or persuasive if he had been granted a continuance.

7. **Criminal Law § 75.14— waiver of rights—knowing, voluntary, intelligent**

A confession in a first degree murder prosecution was properly admitted where defendant was fully advised of his *Miranda* rights and his waiver of those rights was knowing, voluntary, and intelligent in that defendant was questioned in a police car with three officers at the scene of the crime; defendant was familiar with the name of the primary officer and the other two were not always present; there was no evidence that any officer displayed a weapon, touched defendant, or used threatening language; defendant said at trial that he confessed to protect his brother; defendant was not tricked as to why he was being questioned; defendant did not appear to be under the influence of alcohol or drugs; the questioning lasted less than two hours; defendant was eighteen years old and could read and write to a limited degree; defendant had acquired a driver's license at sixteen and had worked a short time; defendant's answers were responsive to questions asked by his attorney; and defendant appeared to have no difficulty answering his attorney's questions notwithstanding his mild mental retardation.

8. **Criminal Law § 75.3— first degree murder—confession—not tainted fruit of prior illegal confession**

A confession by a first degree murder defendant to his father while an officer was present was not the fruit of a prior illegal confession where the prior confession was legal; moreover, the confession to defendant's father was admissible as a voluntary statement against interest because defendant was not being subjected to custodial interrogation and any compelling influence was exerted by the father rather than the officer.

9. **Homicide § 21.6— first degree murder—evidence sufficient**

Defendant's motion to dismiss a murder charge was properly denied where defendant's voluntary written confession revealed that the victim was killed during the robbery of his store by defendant and his brother; the victim was found shot to death outside his store; the cash register was empty and two empty .22 caliber shells were found at the murder scene; a .22 caliber rifle

which was later identified as the murder weapon was found in defendant's house; and defendant admitted to his father that he had shot the victim.

APPEAL by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing life imprisonment, entered by *Rousseau, J.*, at the 7 May 1984 Criminal Session of Superior Court, UNION County, following his conviction of murder in the first degree. Heard in the Supreme Court 11 September 1985.

*Lacy H. Thornburg, Attorney General, by Joan H. Byers, Assistant Attorney General, for the State.*

*W. David McSheehan, for the defendant-appellant.*

FRYE, Justice.

Defendant contends that the trial court erred in denying his motions for independent experts; in refusing to quash the indictment and petit jury venire; in denying his motions to continue, to suppress, to dismiss, to set aside the verdict based on the insufficiency of the evidence and to set aside the verdict as being against the greater weight of the evidence. For the reasons stated in this opinion, we find no error in the trial proceedings leading to defendant's convictions of the crimes charged.

Defendant was charged with murder in the first degree and armed robbery. The State's evidence tended to show that shortly after 8:00 p.m. on 20 December 1983, Al Simpson was found shot to death outside his country store on Highway 200 in Union County. He was last seen alive by his wife around 7:30 that night. A lieutenant with the Union County Sheriff's Department, Jack Carpenter, arrived at the store around 8:30 p.m. and began investigating the death of Mr. Simpson. The cash register in the store was empty. Two empty .22 caliber shells were found at the scene. While in the store, Lieutenant Carpenter received a phone call concerning a car which had been seen earlier near Simpson's store. A woman entering a nearby church had noticed a car parked off Highway 200 near Simpson's store and became suspicious. She drove near the vehicle and noted the license plate number. After learning of Al Simpson's death, she gave this information to the police. The car was registered to defendant.

Sometime during the early morning hours of 21 December 1983, two police officers went to defendant's grandmother's house where defendant was staying. A car fitting the description given by the woman and bearing the same license plate number was parked in the yard. When the officers shined spotlights on the vehicle, several people came out on the front porch. After ascertaining his identity, the officers asked defendant to accompany them to Al Simpson's store to talk to Lieutenant McCain. Defendant agreed and went to the crime scene with the officers.

Defendant was advised of his *Miranda* rights prior to police questioning. Initially, defendant denied any complicity in the crimes but later confessed to the murder and robbery. According to defendant's written confession, he and his brother, Bobby, went to Mr. Simpson's store to rob it. They took with them a .22 caliber rifle which belonged to their father. When Mr. Simpson let them into the store, defendant told him that they wanted his money. Mr. Simpson backed up to a counter and sat down. He then "came at [defendant] grabbing the gun." Defendant shot him several times. While this was occurring, Bobby took the money out of the cash register. Defendant and his brother ran back to the car which was parked on a side road off Highway 200 north of the store, and drove back to their grandmother's house. Bobby gave defendant $17 of the money that he took from the store. Defendant hid the rifle in a closet in his grandmother's house.

On the day following his arrest, defendant admitted to his father in the presence of Officer Rollins that he had shot Al Simpson.

Investigating officers found a .22 caliber rifle in a closet in defendant's grandmother's house. An analysis of the bullets taken from Simpson's body disclosed that the rifle taken from the closet was the murder weapon.

Defendant testified in his own behalf. Defendant's testimony was that around nighttime on 20 December 1983 he and his brother, Bobby, were on their way to get gas from Al Simpson's store when his car ran out of gas. Defendant parked the car on a side road off Highway 200 near the store. Bobby walked to the store to get some gas while defendant stayed with the car. When Bobby returned with the gas, defendant put it in the car and drove to the store to get some more gas. At that time they saw a car at

the store. The two men drove back to their grandmother's house; defendant changed clothes and went to visit several people. Defendant testified that he heard about Al Simpson's murder on that night. Upon hearing this news, he and another brother went out to his car to get the rifle that he had put there earlier for hunting. Defendant found that the bullets were missing but didn't know how this had happened. Defendant testified that he confessed to the murder and robbery because he was covering for Bobby. The jury returned verdicts of guilty of murder in the first degree and armed robbery. Judgment was arrested on the armed robbery conviction. Defendant was sentenced to life imprisonment after the jury was unable to reach a verdict at the sentencing phase of his trial. N.C.G.S. § 15A-2000(b) (1983).

I.

Defendant first assigns as error the denial of his motion for appointment of assistant counsel and the denial of his motions for funds to hire an independent clinical psychologist or psychiatrist, a private investigator, a social psychologist and a statistician. Defendant contends that the denial of these motions severely limited his ability to properly prepare a defense in the case against him.

N.C.G.S. § 7A-450 (1981), provides in pertinent part:

. . . .

(b) Whenever a person, under the standards and procedures set out in this Subchapter, is determined to be an indigent person entitled to counsel, it is the responsibility of the State to provide him with counsel and the other necessary expenses of representation . . . .

N.C.G.S. § 7A-454 (1981) further provides: "The court, in its discretion, may approve a fee for the service of an expert witness who testifies for an indigent person . . . . Fees and expenses accrued under this section shall be paid by the State."

It is well established that the question of whether an expert should be appointed at the expense of the State to assist an indigent defendant is within the sound discretion of the trial judge and his decision thereon will not be reversed on appeal absent a showing of abuse of that discretion. *State v. Williams*, 304 N.C.

394, 284 S.E. 2d 437 (1981). "Experts for trial preparation should be provided only when there is a reasonable likelihood that the expert will materially aid the defendant in the preparation or presentation of the defense or that without such help it is probable the defendant will not receive a fair trial." *State v. Gardner*, 311 N.C. 489, 498-99, 319 S.E. 2d 591, 598 (1984); *see also State v. Stokes*, 308 N.C. 634, 304 S.E. 2d 184 (1983).

In *State v. Gardner*, 311 N.C. 489, 319 S.E. 2d 591, this Court considered whether an indigent defendant was entitled to the appointment of a private investigator to assist in his defense. This Court stated that such an appointment is within the discretion of the judge. We held that "the appointment of a private investigator should be made with caution and only upon a clear showing that specific evidence is reasonably available and necessary for a proper defense, since '[t]here is no criminal case in which defense counsel would not welcome an investigator to comb the countryside for favorable evidence.'" *State v. Gardner*, 311 N.C. at 499, 319 S.E. 2d at 598; *see also State v. Tatum*, 291 N.C. 73, 229 S.E. 2d 562.

[1] Applying the above stated principles to the facts of the instant case, we conclude that the trial judge did not abuse his discretion in refusing to appoint a private investigator to assist defendant. Defense counsel requested the appointment of a private investigator because he did not have time to single-handedly gather available evidence and interview potential witnesses in preparation for the trial. At the motion hearing, defense counsel stated:

> We feel that we need an investigator to go out into the community to gather not only evidence but to interview potential witnesses for the defense, to investigate the background of any of the veniremen that are called to hear this case . . . we need that investigator to be able to do a very thorough search through the broadcasts, newspaper media records to determine if he can or to assist counsel in determining whether or not defendant's rights have been prejudiced by pretrial publicity; that we need that information at our disposal . . . we need to check into all of [defendant's] background, school records, work records, life style, anything of a necessary—to go into trial of the case, to go not only for

the guilt or innocence phase, but also to prove mitigating circumstances in any pre-sentence hearing that may be held in this case . . . .

While defendant's need to obtain all available evidence to aid in his defense has great merit, we do not believe that his arguments rise to the level of showing a reasonable likelihood that the efforts of a private investigator would have materially assisted in the preparation and presentation of his case or that without such assistance he did not receive a fair trial. "[T]he State is not required by law to finance a fishing expedition for defendant in the vain hope that something will turn up." *State v. Gardner*, 311 N.C. at 499, 319 S.E. 2d at 599. We find no abuse of discretion in the trial court's refusal to appoint a private investigator.

[2]   Secondly, defendant contends that the trial judge erred in denying his motion for funds to employ a statistician. In the record and at the hearing on the motion, defendant stated that he needed a statistician to review the jury venire in Union County over a substantial period of time to determine whether the jury commission failed to perform its statutory duty when compiling the jury venire from which defendant's jury would be selected. *See* N.C.G.S. § 9-2 (1981 & Cum. Supp. 1985). Defendant presented no evidence that the new jury selection process in Union County was discriminatory, or that the services of a statistician would have resulted in the selection of a more favorable jury. In effect, defendant was asking the trial court to appoint a statistician to go on a fishing expedition in search of potential violations of the statutes regulating the preparation of jury lists. This is not a sufficient basis to justify the appointment of a statistician. *See State v. Williams*, 304 N.C. 394, 284 S.E. 2d 437. The trial court did not abuse its discretion in denying this motion.

[3]   We now consider the trial court's denial of defendant's motion for the appointment of assistant counsel.[1] At the hearing on the motion, defense counsel essentially stated that assistant counsel was needed because he, as a sole practitioner, didn't have

1. The 1985 amendment to N.C.G.S. § 7A-450 is not applicable to the present case. The 1985 amendment, effective 1 July 1985 and applicable to indictments returned after 11 July 1985, requires appointment of an assistant counsel for an indigent person indicted for murder if the State is seeking the death penalty. N.C.G.S. § 7A-450(b)(1) (Cum. Supp. 1985).

the manpower to adequately prepare, research, and investigate matters in the case.

In *State v. Williams*, 304 N.C. 394, 406, 284 S.E. 2d 437, 445, this Court held that

> as in the case of providing private investigators or other expert assistance to indigent defendants, we think the appointment of additional counsel is a matter within the discretion of the trial judge and required only upon a showing by a defendant that there is a reasonable likelihood that it will materially assist the defendant in the preparation of his defense or that without such help it is probable that defendant will not receive a fair trial.

In the instant case, defendant presented no evidence to the trial court that would tend to establish nor does the record disclose that defendant's case was so factually or legally complex, or plagued with other difficulties as to require the appointment of assistant counsel to ensure defendant's right to a fair trial and an adequate defense. *State v. Easterling*, 300 N.C. 594, 268 S.E. 2d 800 (1980). We note that there is nothing in the record which indicates that defense counsel handled the trial or appeal of defendant's case other than in a competent manner. We find no abuse of discretion in the trial judge's failure to appoint assistant counsel.

[4] Defendant next contends that the trial court erred in denying his motion for funds to employ a social psychologist. Defendant offered no evidence that such an expert would have materially aided him in the preparation of his defense or that absent such assistance it was probable that he would not receive a fair trial. Accordingly, we reject this contention.

Lastly, defendant contends that the trial judge erred in denying his motion for funds to hire a private clinical psychologist or psychiatrist.

By order of Judge Michael E. Beale, dated 27 December 1983, defendant was transferred to Dorothea Dix Hospital for observation and treatment to determine his capacity to proceed to trial. The psychiatrist's report indicated that defendant is mildly mentally retarded and as a result has limited intellectual ability and judgment. In the examining psychiatrist's opinion, defendant was capable of proceeding to trial in that he understood the charges

against him and was capable of aiding his attorneys in his defense.

On 6 February 1984, by oral motion, and 2 March 1984, by written motion, defense counsel moved that funds be made available to hire a private psychiatrist to assist in determining whether defendant's mental capacity was such that he could have voluntarily and intelligently waived his *Miranda* rights prior to making incriminating statements to the police. Following hearings on the motions, both were denied by the trial court. We find no error in the trial court's refusal to provide funds for an additional psychiatric evaluation. Evidence that an indigent defendant is mildly retarded is not a sufficient basis to require the appointment of a private psychiatrist, at least where the defendant has already been examined by a psychiatrist at State expense. *See State v. Gardner*, 311 N.C. 489, 319 S.E. 2d 591. Defendant has not shown that there is a reasonable likelihood that an additional psychiatrist would have materially aided in the preparation and presentation of his case or that he was denied a fair trial.

Defendant contends that *Ake v. Oklahoma*, --- U.S. ---, 84 L.Ed. 2d 53 (1985), requires the appointment of a private psychiatrist in this case. In *Ake*, the Court held that an indigent defendant has a constitutional right to be examined by a private psychiatrist when he has "demonstrated to the trial judge that his sanity at the time of the offense is to be a significant factor at trial." *Ake*, --- U.S. at ---, 84 L.Ed. 2d at 66. In the instant case, we are convinced that defendant failed to make such a demonstration. While there is clear and uncontroverted evidence that defendant is mildly retarded, there was no serious contention that defendant's sanity at the time the offense was committed would be a significant factor at trial. There was no abuse of discretion in the judge's failure to appoint a private psychiatrist for this defendant.[2]

II.

[5] Defendant next argues that the trial court erred in refusing to quash the petit jury venire and the indictment against him. By

---

2. We note that the co-defendant, defendant's brother Bobby, was examined by the same State psychiatrist and found to be so seriously retarded as to only meet the minimum standard for capacity to proceed to trial. Upon this showing, the trial judge afforded Bobby Massey access to an additional psychiatric evaluation.

this assignment of error, defendant contends that the Union County Jury Commission violated several statutory provisions regulating the procedure to be used in preparing jury lists. Specifically, defendant complains that the Commission failed to prepare the jury list at least thirty days prior to 1 January 1984. N.C.G.S. § 9-5 (1981). Also, defendant contends that the commission failed to follow the procedure set forth in N.C.G.S. § 9-2(d) in selecting the jurors, and failed to put in writing a procedure whereby the data processing department was to maintain and effectively preserve public access to the list of prospective jurors, and the time sequence for drawing and summoning a jury panel in violation of N.C.G.S. § 9-2.1. The crux of defendant's arguments is that the statutes use the word *"shall"* throughout which is generally imperative or mandatory and not merely directory. The pertinent statutory provisions are as follows:

N.C.G.S. § 9-2—Preparation of jury lists; sources of names.

    (a) It shall be the duty of the jury commission beginning July 1, 1981, (and each biennium thereafter) to prepare a list of prospective jurors qualified under this Chapter to serve in the biennium beginning January 1, 1982, (and each biennium thereafter).

    . . . .

    (d) When more than one source is used to prepare the jury list the jury commission shall take randomly a sample of names from the list of registered voters and each additional source used. The same percentage of names must be selected from each list. The names selected from the voter registration list shall be compared with the entire list of names, from the second source. Duplicate names shall be removed from the voter registration sample, and the remaining names shall then be combined with the sample of names selected from the second source to form the jury list. If more than two source lists are used, the same procedure must be used to remove duplicates.

    (e) As an alternative to the procedure set forth in subsection (d), the jury commission may merge the entire list of names of each source used, remove the duplicate names, and

randomly select the desired number of names to form the jury list.

N.C.G.S. § 9-2.1. Alternate procedure in certain counties.

(a) In counties having access to electronic data processing equipment, the functions of preparing and maintaining custody of the list of prospective jurors, the procedure for drawing and summoning panels of jurors, and the procedure for maintaining records of names of jurors who have served, been excused, been delayed in service, or been disqualified, may be performed by this equipment, except that decisions as to mental or physical competency of prospective jurors shall continue to be made by jury commissioners. The procedure for performing these functions by electronic data processing equipment shall be in writing, adopted by the jury commission, and kept available for public inspection in the office of the clerk of court. The procedure must effectively preserve the authorized grounds for disqualification, the right of public access to the list of prospective jurors, and the time sequence for drawing and summoning a jury panel.

N.C.G.S. § 9-5. Procedure for drawing panel of jurors; numbers drawn.

The board of county commissioners in each county shall provide the clerk of superior court with a jury box, the construction and dimensions of which shall be prescribed by the administrative officer of the courts. At least 30 days prior to January 1 of any year for which a list of prospective jurors has been prepared, a number of discs, squares, counters or markers equal to the number of names on the jury list shall be placed in the jury box. The discs, squares, counters, or markers shall be uniform in size, weight, and appearance, and may be made of any suitable material. They shall be numbered consecutively to correspond with the numbers on the jury list. The jury box shall be of sufficient size to hold the discs, squares, counters or markers so that they may be easily shaken and mixed, and the box shall have a hinged lid through which the discs, squares, counters or markers can be drawn. The lid shall have a lock, the key to which shall be kept by the clerk of superior court.

At least 30 days prior to any session or sessions of superior or district court requiring a jury, the clerk of superior court or his assistant or deputy shall, in public, after thoroughly shaking the box, draw therefrom the number of discs, squares, counters, or markers equal to the number of jurors required for the session or sessions scheduled . . . .

The trial court, after hearing evidence offered by defendant and the State, made findings of facts summarized as follows:

The jury commissioners, along with the clerk of superior court, the county manager and others [including an advisor from the Administrative Office of the Courts] met on 15 December 1983 to discuss the preparation of the jury list for the 1984-85 biennium. The committee decided to follow the procedure outlined in N.C.G.S. § 9-2, using both the list of registered voters and licensed drivers in Union County. The names from the driver's license list were selected by a computer utilizing an interval selection method. The data processing office selected every seventh name beginning with the fourth name and each seventh name thereafter. The names from the list of registered voters which had already been entered in the computer were selected in the same manner. Those names from the voter registration list which had not yet been entered into the computer were manually selected by the clerk of superior court using the same interval selection process. The manually selected voter list was entered into the computer and a single voter list was compiled. The voter list and the driver's license list were examined and all duplications and disqualified persons under N.C.G.S. § 9-3 were stricken. A final list of prospective jurors was completed 20 December 1983.

The trial court concluded that

even though the Jury Commission may not have followed in detail the exact mandate of the statute, there has been no showing that the Jury Commission or anyone acting on their behalf acted arbitrarily or capricious [sic]. To the contrary, it appears and the court concludes that the names of potential jurors was [sic] randomly selected, both from the voter list and the driver's license list. The court further concludes that the slight variation in the procedure is not a substantial violation of obtaining a randomly selected jury. The court

further concludes that the defendant has not shown any identifiable class who may or might have been excluded from the jury list, nor have they [sic] shown any systematic exclusion of any group of persons, and the court further concludes that the selection of the master jury list in Union County in December 1983 is in substantial compliance with the law.

These conclusions are clearly supported by the record. Thus, the issue before this Court is whether technical and insubstantial violations of the statutes regulating jury selection procedure in Chapter 9 of the General Statutes are sufficient to vitiate a jury list or afford a challenge to the array. We think not.

In *State v. Koritz*, 227 N.C. 552, 556, 43 S.E. 2d 77, 80 (1947), this Court stated that "mere irregularity on the part of the jury commissioners in preparing the jury list, unless obviously, designedly, or intentionally discriminatory, would not vitiate the list or afford a basis for a challenge to the array." Nevertheless, the jury commissioners may not " 'substitute for the methods chosen by the Legislature those of their own as being more desirable and better adapted to accomplish the end in view.' " *State v. Ingram*, 237 N.C. 197, 204, 74 S.E. 2d 532, 537 (1952), quoting from *State v. Mallard*, 184 N.C. 667, 114 S.E. 17 (1922).

In *State v. Vaughn*, 296 N.C. 167, 250 S.E. 2d 210 (1978), *cert. denied*, 441 U.S. 935, 60 L.Ed. 2d 665 (1979), the defendant moved to quash the indictment against him alleging that the Cabarrus County Jury Commission followed improper procedure in compiling the final jury list from which members of his grand jury were selected. We noted that even if there had been a showing that some qualified persons were improperly disqualified from the jury list, dismissal of the indictment would not have been required, "absent a showing of corrupt intent or systematic discrimination in the compilation of the list, or a showing of the presence upon the grand jury itself of a member not qualified to serve." *Id.* at 175, 250 S.E. 2d at 215. The Court further stated that

This Court has held on numerous occasions that, in the absence of statutory language indicating that preparation of jury lists shall be void if the directions of the act be not strictly observed, a mere showing of a violation of the statutory procedures will not merit the quashing of an indictment. *See State v. Yoes, et al.*, and cases cited therein, 271 N.C.

616, 157 S.E. 2d 386 (1967). The fact that these cases were decided prior to the various 1967 amendments to Chapter 9, Article 1, does not vitiate the force of this prior law, for absent from such amendments is the language requiring dismissal unless strict observance is shown. Therefore, we hold that in order to justify a dismissal of an indictment on grounds that statutory procedures were violated in the compilation of the jury list, a party must show either corrupt intent (citation omitted), discrimination (citation omitted), or irregularities which affect the actions of the jurors actually drawn and summoned (citation omitted).

*Id.* at 175, 250 S.E. 2d at 215.

In the instant case, while it is clear that the jury commissioners failed to strictly comply with the statutes, all of the evidence tends to negate any corrupt intent, discrimination, or irregularities which affected the actions of the jurors actually drawn and summoned. The jury commission did not consciously substitute for the methods chosen by the legislature those of their own as being more desirable or better adapted to accomplish the end in view. Instead, realizing that a part of their voter registration records were not yet on computer, they sought assistance from the Administrative Office of the Courts and the Institute of Government in a belated effort to comply with the mandate of the statute. The trial judge found, on competent evidence, that the jurors were randomly selected, both from the voter list and the driver's license list and that the selection of the master jury list was in substantial compliance with the law. Under these circumstances, there is no justification for a dismissal of the indictment or challenge to the array on the basis that statutory procedures were violated in the compilation of the jury list.

### III.

**[6]** Defendant next assigns error to the trial court's denial of his motion for a continuance. At the hearing on the motion, defense counsel argued, among other things, that a continuance was essential so that defendant's recently hired clinical psychologist, Dr. Stack, could further evaluate defendant's mental condition. Defendant contends that it was paramount to his case that he have a proper evaluation and sufficient time for his counsel to talk with

the psychologist in order to properly prepare his defense related to his motion to suppress and other matters.

"A motion for a continuance is ordinarily addressed to the sound discretion of the trial court. Therefore, the ruling is not reversible on appeal absent an abuse of discretion." *State v. Smith*, 310 N.C. 108, 111, 310 S.E. 2d 320, 323 (1984). However, if "a motion to continue is based on a constitutional right, then the motion presents a question of law which is fully reviewable on appeal." *Id.* at 112, 310 S.E. 2d at 323. In his brief, defendant does not base his motion on a specific constitutional right. However, "every defendant possesses a due process right to a reasonable time and opportunity to investigate his case and produce competent evidence in his defense." *Id.*

Assuming, *arguendo*, that defendant is asserting a constitutional right, we must determine whether he is entitled to any relief on appeal. Defendant made requests on 6 February and 2 March 1984 for State funds to hire a private psychiatrist or psychologist. After hearings on the motions, both were denied. Approximately two months elapsed between the date defendant's final motion for the appointment of a psychologist or psychiatrist was denied and the trial date. Dr. Stack examined defendant on 4 May 1984. The trial commenced on 7 May 1984.

In support of his motion, defense counsel argued that a psychologist had not been retained earlier because defendant and his family could not raise sufficient funds to employ such services. Defense counsel stated that he had agreed to pay Dr. Stack's fees from his personal account. While evidence of defendant's financial hardship does not fall on deaf ears, we cannot conclude that the trial court deprived defendant of a reasonable opportunity to investigate his case or produce competent evidence by refusing to grant a continuance. Defendant's motion for funds for a private psychologist was denied as early as 6 February 1984, some three months prior to the actual beginning date of the trial. Under these circumstances, it is difficult to justify a continuance based on the last minute hiring of a psychologist.

Even if the trial court erred in refusing to grant defendant's motion for a continuance, defendant was not prejudiced thereby. Dr. Stack examined defendant prior to trial and testified in a manner favorable to defendant at the suppression hearing. Dr.

Stack testified that in his opinion defendant did not knowingly and intelligently waive his right to counsel before he made incriminating statements to the law enforcement officers. Defendant makes no serious contention that the psychologist's testimony could have been more favorable or persuasive if he had been granted a continuance. Thus, we find that denial of the motion to continue, if error, was harmless beyond a reasonable doubt.

## IV.

[7] Defendant contends that his confession to the charged crimes was inadmissible because (1) it was obtained during a custodial interrogation and (2) his waiver of the *Miranda* warnings was not a knowing, intelligent, and voluntary decision. We do not agree.

The trial court's findings of fact following a voir dire hearing on the voluntariness of a confession are conclusive on appeal if they are supported by competent evidence in the record. *State v. Jackson*, 308 N.C. 549, 304 S.E. 2d 134 (1983); *see also State v. Poole*, 304 N.C. 201, 283 S.E. 2d 732 (1981). "No reviewing court may properly set aside or modify those findings if so supported. (Citations omitted.) This is true even though the evidence is conflicting." (Citations omitted.) *State v. Jackson*, 308 N.C. at 569, 304 S.E. 2d at 145. Thus, we must determine whether the findings are supported by the record.

At the voir dire hearing conducted to determine the admissibility of defendant's confession, the trial court heard evidence, including the testimony of defendant, made the appropriate findings of fact and then concluded as follows:

Based on the foregoing findings of fact the court concludes that on or about the early morning hours of December 21, 1983 the defendant was picked up by Officer Carpenter; that he was not under arrest and that he voluntarily went with the officers back to the scene; that the officers had not had probable cause to arrest the defendant and that while he was being questioned from about 1:00 A. M. to about 3:00 A. M. the defendant was not in custody.

The court further concludes that even if he were in custody that the officers advised the defendant of his constitutional rights and that the defendant signed a waiver of those rights.

The court further concludes that after being advised of his Miranda rights the defendant voluntarily, knowingly and intelligently waived his right to an attorney and voluntarily, knowingly and intelligently made a statement to the Deputy Sheriff, and that that statement is admissible in the trial of this case.

Defendant challenges the trial court's conclusion that he was not in custody when questioned by the officers on the morning of 21 December 1983. Defendant contends that a "custodial interrogation" was conducted and that he was deprived of his freedom of action in a significant way, thereby constituting a *de facto* arrest and custodial restraint. We find it unnecessary to decide the question of "custodial interrogation," since defendant was, in any event, fully advised of his *Miranda* rights prior to police questioning concerning the homicide and armed robbery. *See Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed. 2d 694 (1966). Assuming, *arguendo*, that defendant was in custody, we will address his contention that the confession was inadmissible because he did not knowingly, intelligently, and voluntarily waive his *Miranda* rights. Defendant argues that he signed the waiver of rights form due to psychological pressure and coercion and his limited intellectual and mental abilities.

In determining the voluntariness of a confession, we must look at the totality of the circumstances of the case. *See State v. Jackson*, 308 N.C. 549, 304 S.E. 2d 134. The testimony of several officers and defendant discloses that defendant was questioned in a police car in the presence of three officers at the murder scene. Defendant testified that he was familiar with the name of Lieutenant McCain, the officer who primarily conducted the interview. The evidence also shows that the other two officers were not present at all times during the interview. There is no evidence that any officer displayed a weapon, touched defendant, or used threatening language. Defendant testified at trial that he was in no way threatened by the officers nor did he complain to them about the manner in which he was being treated. According to defendant's testimony, he confessed in order to protect his brother, Bobby, his co-defendant. Prior to any questioning about the murder and robbery, defendant was read his *Miranda* rights and stated that he understood them. No promises or inducements were made to defendant. Defendant was not tricked as to why he

was being questioned. During the questioning defendant did not appear to be under the influence of alcohol or drugs. He was questioned for less than two hours. Defendant was eighteen years old and could read and write to a limited degree. He acquired a driver's license at age sixteen, had worked for a short time, and had never been in trouble.

The trial judge personally observed defendant and found him to be a "well-developed young male." The judge also found that defendant's answers were responsive to questions asked by his attorney and that defendant appeared to have no difficulty understanding his attorney's questions, notwithstanding his mild retardation.

While there was competent evidence that defendant is mildly retarded, "a subnormal mental condition standing alone will not render an otherwise voluntary confession inadmissible." *State v. Stokes*, 308 N.C. 634, 304 S.E. 2d 184 (1983). Dr. Rollins testified that defendant is mildly mentally retarded and has a reading level of 3.9 and a mental age of ten or eleven. He testified that he did not believe mental age accurately portrays a person and that with greater life experiences a person may function at a higher intellectual level than his mental age reflects.

After carefully reviewing the record, we conclude that the trial court's conclusion that defendant, after being advised of his *Miranda* rights, voluntarily, knowingly, and intelligently waived his right to have an attorney and voluntarily, knowingly and intelligently made an inculpatory statement to the police is supported by competent evidence in the record. The confession was properly admitted.

[8] Next, defendant contends that his subsequent confession to his father was inadmissible because it was the fruit of the illegally obtained written confession received hours earlier. Subsequent to defendant's and his brother's arrest, the Sheriff of Union County telephoned their father, Robert Massey, and advised him that he could visit his sons in jail if he so desired. Between the hours of 9:30 a.m. and 12:00 noon on 21 December 1983, Mr. Massey went to the Union County jail and was escorted to a conference room where he talked briefly with his sons. At one point, Mr. Massey asked defendant who had shot the victim. Officer Rollins, who was present in the conference room during this visit, testi-

fied that defendant replied that he had done the shooting. At no time did the officer tell defendant that any statements made in his presence could be used against him. Defendant objects to Officer Rollins' testimony on the grounds that defendant's confession to his father was the fruit of the prior illegally obtained confession and thus inadmissible.

Since we have held that defendant's initial confession was not illegally obtained, no presumption arises therefrom that the second confession is tainted. Nor are *Miranda* warnings usually required when the defendant is not being subjected to custodial interrogation. *See Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed. 2d 694, and *State v. Stephens*, 300 N.C. 321, 266 S.E. 2d 588 (1980). "Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." *Miranda v. Arizona*, 384 U.S. 436, 478, 16 L.Ed. 2d 694, 726.

In the instant case, defendant was not being subjected to custodial interrogation when he told his father that he had shot the victim. Therefore, no *Miranda* warnings, specifically the right to remain silent, were required. Defendant, in the course of conversing with his father, voluntarily stated that he shot the victim. Any compelling influence was exerted by the father's questioning of defendant, not by the officer. Under these circumstances, the confession is admissible as a voluntary statement against his interest freely made by defendant. It also served to corroborate defendant's written confession to the police.

V.

[9] Defendant contends that the trial court erred in denying his motion to dismiss renewed at the close of all the evidence. Defendant argues that without the two statements of confession, which he alleges were illegally obtained, there was insufficient evidence to submit the case to the jury. Having determined that the confessions were properly admitted, it is clear that this assignment of error must be rejected.

Upon a motion for dismissal, the trial court must determine whether there is substantial evidence of each essential element of the charged offenses, and of the defendant being the person who committed the crime. *See State v. Bullard*, 312 N.C. 129, 322 S.E. 2d 370 (1984); *State v. Earnhardt*, 307 N.C. 62, 296 S.E. 2d 649

(1982). If such evidence is present, the motion to dismiss is properly denied. *See State v. Bullard*, 312 N.C. 129, 322 S.E. 2d 370. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 160, 322 S.E. 2d at 387.

When ruling on a motion to dismiss, the trial court must consider the evidence in the light most favorable to the State and the State is entitled to every reasonable inference to be drawn from that evidence. *See State v. Bullard*, 312 N.C. 129, 322 S.E. 2d 370; *State v. Earnhardt*, 307 N.C. 62, 296 S.E. 2d 649. Any contradictions and discrepancies in the evidence must be resolved in favor of the State and evidence presented by the defendant is not to be considered unless favorable to the State. *See State v. Bullard*, 312 N.C. 129, 322 S.E. 2d 370; *State v. Earnhardt*, 307 N.C. 62, 296 S.E. 2d 649.

Applying the cited rules to the facts of the instant case, we do not find error in the trial court's denial of defendant's motion to dismiss. Defendant's voluntary written confession reveals that Al Simpson was killed during the robbery of his store by defendant and his brother. The victim was found shot to death outside his store. The cash register was empty and two empty .22 caliber shells were found at the murder scene. Defendant's car had been seen parked in the vicinity of the victim's store around the time of the shooting. A .22 caliber rifle, later identified as the murder weapon, was found in defendant's home. Defendant admitted to his father that he had shot the victim. When this evidence is considered in a light most favorable to the State, there is substantial evidence that each of the essential elements of armed robbery and murder in the first degree under the felony murder rule were met and that defendant was the perpetrator of the crimes. Therefore, the trial judge correctly denied defendant's motion to dismiss and properly submitted the case to the jury.

## VI.

Finally, defendant contends that the trial court abused its discretion in denying his post-trial motions to set aside the verdict based on the insufficiency of the evidence and as being against the greater weight of the evidence.

For the reasons stated in Part V of this opinion, we find no error or abuse of discretion in the trial court's denial of defendant's motion to set aside the verdict based upon the insufficiency of the evidence.

A motion to set aside the verdict as being contrary to the greater weight of the evidence is addressed to the sound discretion of the trial judge, and his decision thereon will not be reviewed on appeal absent an abuse of discretion. *See State v. Freeman*, 313 N.C. 539, 330 S.E. 2d 465 (1985). Defendant has shown no abuse of discretion by the trial court in denying his motion. This contention is without merit.

In the defendant's trial, we find

No error.