STATE OF NORTH CAROLINA v. JOE FORNOCKER SMITH

No. 151A83

(Filed 10 January 1984)

1. **Criminal Law § 91.6— denial of continuance—alleged insufficient time to obtain psychiatric evaluation—no abuse of discretion**

   Defendant failed to show that the trial court's denial of his motion for continuance was an abuse of discretion where more than five weeks elapsed between the date defendant's motion for a psychiatrist was allowed and the trial date and when defendant's motion for a psychiatrist was allowed, it was made clear by the trial court that defendant should promptly secure the psychiatrist, if at all, so as not to jeopardize the trial date. Further, defendant failed to show that the time allotted him to obtain the services of a private psychiatrist was unreasonable; therefore, he failed to show denial of the process.

2. **Criminal Law § 50— opinion as to whether defendant was "competent to stand trial"—legal conclusion—objection properly sustained**

   There was no error in the trial court's refusal to admit Mrs. Smith's opinion as to whether her husband was "competent to stand trial" since whether a criminally accused is "competent to stand trial" or, more appropriately, lacks the mental capacity to proceed is a legal conclusion to be drawn by the trial judge upon appropriate findings of fact. G.S. 15A-1001(a).

3. **Criminal Law § 5.1— objection to testimony concerning defendant's sanity—even if improperly sustained no reasonable possibility different result would have been reached**

   Assuming arguendo that an objection to certain testimony concerning a statement defendant made to a psychologist during her initial examination of defendant was improperly sustained, there was no reasonable possibility that a different result could have been reached at trial on the issue of defendant's insanity had the court overruled the state's objection; therefore, the ruling sus-

State v. Smith

taining the objection was harmless error. G.S. 15A-1443(a). The jury heard the evidence; there was no motion to strike; the jury was not instructed to disregard the testimony; and there was other evidence of defendant's bizarre actions about which the psychologist testified without objection.

APPEAL by defendant from a judgment of *Judge Wiley F. Bowen*, entered at the 29 November 1982 Criminal Session of JOHNSTON Superior Court, imposing two life sentences. N.C. Gen. Stat. § 7A-30 (1981). Defendant's motion to bypass the Court of Appeals in two companion cases in which lesser sentences were given was allowed. *Id.* § 7A-31.

*Rufus L. Edmisten, Attorney General, by G. Criston Windham, Assistant Attorney General, for the state.*

*Adam Stein, Appellate Defender, by Marc D. Towler, Assistant Appellate Defender, for defendant appellant.*

EXUM, Justice.

Through this appeal, defendant seeks review of his convictions for two sexual assaults, a burglary and a robbery. He contends that there was error in the denial of his motion for continuance and in certain evidentiary rulings by the trial judge during a hearing on the question of his capacity to proceed and during trial before the jury. We conclude defendant had a fair trial free from reversible error.

On 2 June 1982, the victim of these crimes, a 63-year-old retired schoolteacher, registered and checked into a room at Johnson's Motor Lodge in Smithfield, North Carolina, stopping overnight while en route to New York from Orlando, Florida. Late that evening, she responded to a loud knocking at her motel room door. Although she barely opened the door, two men burst into the room. During the next hour, these two men repeatedly raped her by force and against her will. Both men forced her to perform fellatio on them and committed other sexual assaults. One man brandished a knife and threatened to kill her while these assaults occurred. After the sexual assaults, the two men demanded money and ransacked the victim's purse. They took cash, credit cards, and traveler's checks. Before leaving the room, they bound and gagged the victim, left her face down on the bed, and urinated on her.

Defendant was charged in four, proper indictments with first degree rape, first degree sexual offense, first degree burglary, and armed robbery. Specifically, the indictments charge that defendant aided and abetted one Louie Carlos Ysaguire, alias Louis Garcia, in committing these offenses. Ysaguire was charged and tried separately. *See State v. Ysaguire*, 309 N.C. 780, 309 S.E. 2d 436 (1983).

Immediately after defendant's arrest, his court-appointed attorney moved for a determination of defendant's capacity to stand trial. Pursuant to court order, defendant was examined by Dr. Susan C. Arnold, a psychologist and certified forensic screening examiner. After her observation, questioning, and examination of defendant, she recommended that he undergo further evaluation at Dorothea Dix Hospital. Defendant was subsequently committed to this hospital for evaluation by order of Judge Bowen.

On 21 October 1982 Judge Gordon Battle conducted a hearing on defendant's capacity to stand trial. Dr. Arnold and Dr. Bob Rollins, a forensic psychiatrist who had examined defendant at Dorothea Dix, testified, and their reports were introduced into evidence. Dr. Rollins testified that defendant was aware of his legal situation and capable of communicating with and assisting his counsel at trial. Judge Battle concluded defendant had the capacity to proceed to trial. Upon motion by defense counsel, Judge Battle ordered that defendant be permitted to employ a private psychiatrist at state expense.

More than five weeks later on the day of trial, 29 November 1982, before Judge Bowen, defendant moved for another hearing on his capacity to proceed and for a continuance to be able to employ a private psychiatrist. Judge Bowen denied the motion to continue. He did conduct a second hearing on defendant's capacity to proceed.

At this second capacity hearing, the reports of Drs. Arnold and Rollins were introduced along with a transcript of Dr. Rollins' testimony at the first capacity hearing. Defendant offered his own testimony and that of his wife, Brenda Smith. Judge Bowen found no material change in defendant's capacity since the initial hearing and concluded that defendant had the capacity to proceed to trial.

At trial, the victim of the crimes identified defendant as one of her assailants. Defendant relied primarily on the defenses of insanity and duress. Defendant testified that his companion, Ysaguire, on the night in question had given him a pill for a headache. The pill had an unusual effect on him and made him dizzy. The two arrived at Johnson's Motor Lodge. Defendant's companion pulled a knife on him and forced defendant to go into the motel room. Defendant's companion told him "we're in this together" when defendant asked what was going on. Defendant recalled seeing his companion and the victim lying on the floor and his companion was behind her on his knees doing something he "had no business [doing]." Defendant's companion kept threatening him with a knife. Otherwise defendant's recollection of what happened in the motel room was vague. Defendant said he intended to report the incident to the police but when he got to the police he "couldn't get out what I was trying to tell them and one of the officers told me . . . to get in the car and sit down." Defendant denied any wrongdoing on his part.

Defendant also offered the testimony of Dr. Arnold and Dr. Rollins and some of his family members on the issue of his insanity. Dr. Rollins said defendant was suffering from a mild degree of paranoid schizophrenia. On cross-examination Dr. Rollins testified that in his opinion defendant knew right from wrong on the day of the incident. Defendant had been discharged from the military because of mental illness.

The jury returned guilty verdicts on all four counts. Defendant was sentenced to two life terms and two fourteen-year terms, each to run consecutively. Each sentence constituted either a mandatory or presumptive sentence for the respective offense.

I.

[1] Initially, defendant assigns error to the trial judge's denial on the day of trial of his motion for a continuance. Defendant argued in support of the motion that he needed more time to obtain a privately employed psychiatrist at state expense, which the court, by order on 21 October 1982, had allowed him to do.

A motion for a continuance is ordinarily addressed to the sound discretion of the trial court. Therefore, the ruling is not reversible on appeal absent an abuse of discretion. *State v.*

*Baldwin,* 276 N.C. 690, 697, 174 S.E. 2d 526, 531 (1970). If, however, a motion to continue is based on a constitutional right, then the motion presents a question of law which is fully reviewable on appeal. *Id.* at 698, 174 S.E. 2d at 531. Every defendant possesses a due process right to a reasonable time and opportunity to investigate his case and produce competent evidence in his defense. *Id. See also State v. Utley,* 223 N.C. 39, 25 S.E. 2d 195 (1943); *State v. Whitfield,* 206 N.C. 696, 175 S.E. 93 (1934). *See generally Powell v. Alabama,* 287 U.S. 45 (1932).

More than five weeks elapsed between the date defendant's motion for a psychiatrist was allowed (21 October 1982) and the trial date (29 November 1982). In the course of allowing the motion, the trial date at that time having already been set, Judge Battle warned defendant, "I am not inclined to delay the trial in any way for this, and it's something you're just going to have to take care of very promptly if it's going to be done." Counsel for defendant said, thereafter, "I will make every effort to find a psychiatrist . . . as soon as possible and as expediently as possible." Thereafter, Judge Battle again warned, "Once again, we're not going to delay the trial for this, no reason you can't get it accomplished in about a couple of weeks." Defendant's counsel replied, "Okay, Your Honor." It was thus made clear to defendant when his motion for a psychiatrist was allowed that he should promptly secure the psychiatrist, if at all, so as not to jeopardize the trial date.

In support of his motion to continue, defendant's counsel stated to the court that he had "made every attempt to get a private psychiatrist" but that he had "not been able to locate one." Defendant's counsel said, "I have made various telephone calls to psychiatrists and I have been unable to get one and Dr. Lowenbach said he would assist me, but I was unable to get him here today." Counsel said further, "I made various calls myself to doctors and [defendant's wife] has also done the same thing, and the question is still in air, Your Honor." Defendant's wife, Brenda Smith, testified that she had contacted three different psychiatrists but had been unsuccessful in getting any of these to examine defendant.

On the face of it, we conclude that five weeks is a reasonable time within which to secure the services of a private psychiatrist

and have the psychiatrist make at least a preliminary examination of defendant. If more time is then reasonably needed by the psychiatrist, the psychiatrist will be in a position to say so and to say why.

Here, through counsel, defendant, knowing when his motion for a psychiatrist was allowed on 21 October that his trial was scheduled to begin on 29 November, acknowledged the necessity for and agreed to use prompt action in obtaining a psychiatrist's services so as not to delay the trial. He made no motion to continue at that time. Tacitly at least, defendant acknowledged the reasonableness of the time given. Yet on the day of trial, more than five weeks later, he apparently had not even secured a psychiatrist's services. At the very least, he had not secured these services in time for the psychiatrist to make even a preliminary examination of him. Other than a vague reference to Dr. Lowenbach's saying "he would assist me," defendant made no credible showing that he would be able to secure a psychiatrist's services even if given more time to do so.

We conclude, therefore, that defendant has failed to show that the time allotted him to obtain the services of a private psychiatrist was unreasonable; therefore there has been no denial of due process. Neither has he shown that the trial court's denial of his motion for continuance, under the circumstances here, was an abuse of discretion. Accordingly, defendant's assignment of error based on this denial is without merit.

## II.

[2] Defendant next assigns error to the trial judge's evidentiary rulings during Brenda Smith's testimony regarding his capacity to stand trial at the 29 November 1982 capacity hearing. Mrs. Smith was asked several questions, objections to which were sustained. Only one of her answers is included in the record. Therefore, we can review only the propriety of the exclusion of this one answer. *State v. Shaw,* 293 N.C. 616, 628, 239 S.E. 2d 439, 446-47 (1977). In this incident, the following transpired at trial:

Q. Do you have an opinion as to whether or not he's competent in your ownself as to whether or not he's competent to stand trial, Mrs. Smith?

MR. LOCK: Objection.

COURT: Sustained.

MR. FLOORS: Your Honor, I would like to have her answer placed in the record, please.

Q. Do you have an opinion as to whether or not Joe Smith, your husband, is competent to stand trial at this time?

A. No, I don't think he's competent.

Q. You don't think he's competent?

(Witness shaking head.)

A lay witness who has observed, conversed, or dealt with another person and who has had a reasonable opportunity to form an opinion satisfactory to the witness as to that person's mental condition may testify as to the witness's opinion. *State v. Brower,* 289 N.C. 644, 663, 224 S.E. 2d 551, 564 (1976); 1 *Brandis on North Carolina Evidence* § 127, at pp. 486-87 (1982).

But no witness, lay or expert, may testify to a legal conclusion. *See* 1 Brandis, *supra,* § 130, pp. 501-02. Whether a criminally accused is "competent to stand trial" or, more appropriately, lacks the mental capacity to proceed, *see* N.C. Gen. Stat. § 15A-1001, is a legal conclusion to be drawn by the trial judge upon appropriate findings of fact. Section 15A-1001 provides:

(a) No person may be tried, convicted, sentenced, or punished for a crime when by reason of mental illness or defect he is unable to understand the nature and object of the proceedings against him, to comprehend his own situation in reference to the proceedings, or to assist in his defense in a rational or reasonable manner. The condition is hereinafter referred to as 'incapacity to proceed.'

Under the statute a criminally accused lacks the capacity to proceed if "he is unable to understand the nature and object of the proceedings against him, to comprehend his own situation in reference to the proceedings, or to assist in his defense in a rational or reasonable manner." *Id.* In essence, the statute has codified these factual descriptions of an accused's incapacity to proceed from similar descriptions in our earlier cases. *See State*

*v. Taylor*, 290 N.C. 220, 227, 226 S.E. 2d 23, 30 (1976). In *Taylor* the Court properly described whether a defendant had the capacity to proceed within the meaning of section 15A-1001 as a legal conclusion. Witnesses, both lay and expert, must testify in terms of the factual descriptions set out in the statute. They may, if a proper foundation is laid, give opinions as to whether a defendant, for example, is able to understand the nature and object of the proceedings against him, or to comprehend his own situation in reference to the proceedings, or to assist in his defense in a rational way. They may not give an opinion on the legal question of whether defendant lacks or possesses the capacity to proceed. There was, therefore, no error in the trial court's refusal to admit Mrs. Smith's opinion as to whether her husband was "competent to stand trial."

### III.

[3]  Finally, defendant assigns error to the trial court's sustaining an objection to Dr. Arnold's testimony concerning a statement defendant made to her during her initial examination of defendant on 4 June 1982 soon after defendant's arrest. Dr. Arnold, describing defendant's statement, said:

> He stated that he had—before he was—in trying to determine whether he understood the charges against him, I asked him what he had been doing prior to the moment that he had been arrested and he stated that he had been in Fort Benning, Georgia in jump school.

Thereafter, the state objected to this testimony and the court sustained the objection. No motion to strike the answer was made and the trial judge did not instruct the jury to disregard the answer. Earlier at a pretrial hearing on defendant's capacity to proceed, Dr. Arnold testified defendant told her he had been arrested "three minutes ago at Fort Benning, Georgia."

When considered in context of other evidence at the trial, it is clear that defendant did not offer Dr. Arnold's testimony to prove that defendant was in fact at Fort Benning, Georgia, immediately before his arrest on these charges. Rather, the testimony was offered either to prove that defendant was uttering strange, nonsensical statements and was out of touch with reality, *i.e.*, to show his unsound state of mind, or to show the

basis for Dr. Arnold's opinion as to defendant's mental state at the time she examined him, *i.e.*, that she was unable to determine whether defendant understood the charges against him and could rationally participate in his defense. *See State v. Wade*, 296 N.C. 454, 251 S.E. 2d 407 (1979).

We do not decide whether the testimony was admissible for either purpose. We note only that there are limitations on the admissibility of a defendant's declarations offered to show his state of mind made after the commission of the crime. *See id.* at 466, 251 S.E. 2d at 414. We note, further, that ordinarily it is not error for a trial judge to sustain a general objection if the evidence is inadmissible for any purpose. *State ex rel. Freeman v. Ponder*, 234 N.C. 294, 67 S.E. 2d 292 (1951); 1 Brandis, *supra*, § 27, at p. 104.

Assuming arguendo that the evidence was admissible for either or both purposes, we are satisfied that there is no reasonable possibility that a different result would have been reached at trial on the issue of defendant's insanity had the court overruled the state's objection; therefore, the ruling sustaining the objection was harmless error. N.C. Gen. Stat. § 15A-1443(a). The jury heard the evidence; there was no motion to strike; and the jury was not instructed to disregard this testimony. More importantly, there was other evidence of defendant's bizarre actions about which Dr. Arnold testified without objection. She testified:

Q. Did he do anything in your presence, that caught your attention, physically to himself?

A. Well, he did several things that were out of the ordinary, I suppose. I observed him coming into the building and he stopped, he was handcuffed and he stopped and picked some flowers out of the planters in front of the center on the way in. And then when he entered the room, he, as I mentioned before, he did not initially answer my questions but more or less stared into space. Finally he did begin to answer my questions, but often his answers did not coincide particularly well with the questions that I was asking him. He stated that he had—before he was—in trying to determine whether he understood the charges against him, I asked him what he had been doing prior to the mo-

ment that he had been arrested and he stated that he had been in Fort Benning, Georgia in jump school.

MR. TWISDALE: Objection to the conversation.

COURT: Sustained.

Q. Did he make any gestures with his head while he was in your presence?

A. Toward the end of the examination, after I was unable to obtain any information from him regarding his ability to cooperate with his attorney, or knowledge of the charges against him, I stated that I was going to recommend that he go to Dorothea Dix Hospital for further evaluation and, but at that point he asked me if he could call his wife to come and get him, which I told him he would have to talk to the, you know, the jailers about that, and I told him that if he was afraid to leave, that the deputy would take him back, and I stood up to leave the room and he remained seated, and I called his name and he did not respond, and then the deputy stood up and called his name and at that point he tensed, he appeared to be tense in his muscles. He had his fists very tightly clenched and he banged his head on the table three times.

She also testified defendant appeared before her for examination with a rag tied around his head from which broken cups were suspended that covered his ears. There was likewise other evidence of a similar vein from other witnesses on the issue of defendant's insanity. Defendant claimed that he heard voices and hallucinated. Defendant's brother testified that a few days before 2 June 1982 defendant had "straight-wired" his father's truck, drove off and returned, walking. When asked where the truck was, defendant replied he did not know. In addition to this kind of evidence, Dr. Rollins testified that defendant suffered from mild paranoid schizophrenia, resulting in a disorganization of thinking and overreaction to stress.

In light of this other evidence and the jury's having in fact heard the testimony to which objection was made without being instructed to disregard it, we are satisfied the court's ruling had no effect whatever on the jury's decision on the insanity issue.

*See State v. Sanders,* 276 N.C. 598, 616, 174 S.E. 2d 487, 499 (1970).

In defendant's trial we find

No error.