STATE OF NORTH CAROLINA v. TAMILA LYNN SILVERS

No. 1A88

(Filed 4 January 1989)

**1. Criminal Law § 50— capacity to stand trial—opinion of jailers**

 The trial court erred in a first degree murder prosecution in which the issue of defendant's capacity to stand trial had been raised by excluding the testimony of two employees of the Sheriff's Department who had observed defendant during her pretrial incarceration and who felt that defendant did not fully comprehend what was going on and could not assist in her own defense in a rational manner. Lay witnesses may testify, upon proper foundation, in terms of the tests set out in N.C.G.S. § 15A-1001(a). There was prejudice from the exclusion of the testimony here because this was the only evidence of defendant's condition shortly before trial.

**2. Criminal Law §§ 50, 6— capacity to stand trial—effect of voluntary intoxication—otherwise insane defendant—legal conclusion by psychiatrist**

 The trial court erred in a prosecution for first degree murder, which was reversed on other grounds, by permitting a psychiatrist to offer an interpretation of the law that, if defendant was voluntarily intoxicated, she was responsible for her actions even if her underlying mental disorder might otherwise render her legally insane. Not only was the witness improperly permitted to state a legal conclusion, which was later used by the District Attorney in his closing argument, but the conclusion rests upon a misapprehension of the law.

APPEAL pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing life imprisonment for defendant's conviction by a jury of first degree murder at the 19 October 1987 Criminal Session of Superior Court, RUTHERFORD County, *Owens, J.,* presiding. Heard in the Supreme Court on 13 October 1988.

*Lacy H. Thornburg, Attorney General, by Charles M. Hensey, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Staples Hughes, Assistant Appellate Defender, for defendant appellant.*

EXUM, Chief Justice.

The issue we find dispositive of this appeal is whether in ruling on the pretrial question of defendant's competency to proceed, the trial court erred to defendant's prejudice by excluding lay opinion testimony relevant to this question. We hold it did err,

vacate the verdict and judgment entered below and remand for further proceedings.

I.

Defendant was arrested on 22 May 1987 and charged with murdering Connie Mae Kennedy Davis. On 26 May 1987 defendant was referred to the North Carolina Division of Mental Health/Mental Retardation/Substance Abuse Services at Dorothea Dix Hospital in Raleigh for evaluation of her capacity to proceed to trial. Defendant was examined by Dr. Bob Rollins, a forensic psychiatrist, who filed a report of the examination on 4 June 1987. Dr. Rollins diagnosed chronic schizophrenia and concluded that although defendant was prevented by her mental illness from distinguishing right from wrong when she murdered her victim, defendant was competent to proceed to trial. Defendant was released from the hospital after ten days and incarcerated at the Rutherford County jail.

Defendant was indicted for murder on 7 July 1987, and on 16 July she returned to Dorothea Dix Hospital after having difficulty adjusting to her incarceration. Defendant's capacity to proceed to trial was re-evaluated by Dr. Rollins, and he determined defendant remained capable of so proceeding. The doctor also noted during this second examination that he had received information from the District Attorney's office regarding defendant's use of marijuana sometime before murdering her victim. Based on this information the doctor revised his opinion of 4 June 1987. He concluded in a report signed 22 July 1987 "that Ms. Silvers' mental disorder likely was made worse by voluntary .intoxication" and that she · "would be considered responsible for her actions" because of her marijuana use.

At the 19 October 1987 Criminal Session of the Superior Court for Rutherford County, before arraignment, defendant moved for determination of her capacity to proceed to trial pursuant to N.C.G.S. § 15A-1001. Defendant offered the lay opinions of two officers of the Rutherford County Sheriff's Department who had observed defendant during her pretrial incarceration. The state objected to these witnesses giving their opinions regarding defendant's ability to understand the nature of the proceedings against her, and the trial court sustained these objections. The state then submitted Dr. Rollins' two reports, written

in June and July, respectively, that concluded defendant was capable of proceeding to trial. The state put on no additional evidence. After listening to arguments and reviewing the two reports, the trial judge ruled defendant was competent to proceed to trial.

Defendant was then arraigned and pleaded not guilty to first degree murder. The state informed the court it found no evidence of aggravating circumstances pursuant to N.C.G.S. § 15A-2000(e) and would not seek the death penalty if defendant were convicted.

At trial state's evidence tended to show that, when not institutionalized at mental health facilities, defendant lived in a trailer directly behind her mother's home in Caroleen. Some time before murdering Connie Davis on 22 May 1987 defendant had a relationship with Carlos Rhodes. When this relationship ended defendant formed a relationship with Phillip Doster, who was later convicted of drug charges and imprisoned. Carlos Rhodes began dating the murder victim and enjoyed a friendship with her at the time of her death.

The victim's sister and a neighbor both testified that the victim expressed fear of defendant and that defendant had threatened her in the weeks before her murder. Another sister of the victim testified to hearing defendant say in 1985 or 1986 that defendant could kill somebody or do anything she wanted and "get by with it" because she had been "in Broughton [Hospital]" and people thought she was crazy.

Connie Davis spent the day of 22 May 1987 with her seven-year-old son at a friend's home. At midnight Carlos Rhodes persuaded Connie Davis to return to her trailer with him. After returning, they received a telephone call from defendant. She asked to borrow cigarettes and walked down to Connie Davis' trailer. After, being let in, defendant sat on the sofa next to the victim, lit a cigarette and without provocation drew a knife and stabbed Connie Davis in the chest. The knife penetrated an artery, a lung and the victim's heart. Davis jumped up and defendant stabbed her again, in the upper portion of her left arm. The victim was rendered unconscious in a matter of minutes and died in five to ten minutes as a result of massive internal bleeding.

Defendant did not dispute the state's version of the murder but offered evidence supporting her defense of insanity. Evidence presented by defendant revealed she had a long history of chronic psychosis. There was testimony that at age fifteen defendant suffered a serious injury to the back of her head at a local swimming area. The accident required defendant's extended hospitalization. Defendant's mother said defendant's mental problems followed this accident. Defendant quit school in the ninth grade and was institutionalized on numerous occasions at several mental hospitals. She was diagnosed as suffering from paranoid schizophrenia. Dr. Rollins' evaluations include a report of past diagnoses including chronic schizophrenia or schizoaffective disorders, antisocial disorders, borderline personality disorders, borderline intellectual functioning, overanxious disorders and dysthymic disorders. Doctor Rollins found defendant's mental disorder characterized by pervasive delusional thinking and auditory hallucinations.

During defendant's first stay at Dorothea Dix Hospital following her arrest, she wrote a letter to Phillip Doster, who was at the Spindale Prison Camp in Spindale, North Carolina. This letter read in part:

> Phillip, Hey, hey they've got me. They got me for 1st degree murder. Guess who I killed? Connie Kennedy. Phillip, I don't know what in the hell got into me. I went crazy. I got high and I was real depressed. I went and got a knife. I put it in my bra. I called Connie and asked her if I could borrow a few cigarettes. Hell, I had a whole pack. I walked out there and sit [sic] on the couch and lit a cigarette and then I got the knife out and I stabbed her right in the heart. She jumped up and I stabbed her to death. It was awful. I'm at Dorothea Dix right now. There's some nice staff here and nice murders too. I have to stay here 10 days and then they put me back in jail.

II.

A.

[1] In support of her motion before arraignment to determine her capacity to proceed to trial, defendant called two witnesses who had opportunity to observe defendant during her incarceration. The testimony of both witnesses was excluded by the trial court.

In her first assignment of error defendant contends the trial court erred in excluding testimony of Joan Lavender, an employee of the Rutherford County Sheriff's Department and George Cash, Sergeant of the Rutherford County Jail and an employee of the Sheriff's Department.

Joan Lavender testified she had worked for the Sheriff's Department for two years and during cross-examination stated she had no formal training in mental health but had practical experience in dealing with many mental patients while working at the jail. Lavender stated she had become acquainted with defendant since defendant's pretrial incarceration through 20 or 30 occasions to observe and speak with defendant. She had seen defendant within the week before she testified. After acknowledging she had had the opportunity to talk with defendant and "be around her closely," Lavender was asked by defense counsel:

Do you have an opinion satisfactory to yourself as to whether or not Tamila Silvers at the present time understands the nature and object of the proceedings against her, yes or no?

The District Attorney objected:

Objection, there's medical experts that cannot [qualify] to answer that question. Mrs. Lavender is a nice lady and excellent officer but we don't think she's any more qualified than we would be to answer that particular question.

The court sustained the objection but permitted the witness to answer and be cross-examined for the record. She testified, "As many times as I've been around Tammy, I don't think she fully comprehends what's going on." Lavender also stated she did not believe defendant was able to assist in her own defense in a rational manner.

Defendant next called Sergeant Cash, who described his responsibilities as ensuring prisoners' safety and humane treatment and confirming the presence of a jailer and matron at the jail 24 hours a day. This witness testified he had observed defendant "most every day" after her incarceration. The following colloquy occurred:

Q. I'll ask you also if you have an opinion satisfactory to yourself as to whether or not because of her mental illness or

defect, she's able to assist in her defense in a rational or reasonable manner, yes or no?

MR. LEONARD: Objection.

THE COURT: Objection sustained.

Q. I offer it.

A. No sir, I do not.

CROSS EXAMINATION BY MR. LEONARD:

Q. Are you saying you don't have an opinion as to those things?

A. I'm saying as long as it would take to try the case, I, personally, don't think she could stay in one mood long enough to handle it.

Q. Maybe I misunderstood, I thought when Mr. Harris asked you if you had an opinion you said no, you didn't have an opinion?

A. I said she's not capable in my opinion.

At the competency hearing the District Attorney put on no witnesses but offered the two reports by Dr. Rollins that we have described above.

After hearing counsel's arguments, the trial judge ruled:

Let the record show that the defendant offered the testimony of Joan Lavender, a Deputy Sheriff of Rutherford County and George Cash, a Deputy Sheriff of Rutherford County; that the witness, Joan Lavender has no special training in diagnosing medical condition[s], neither has the witness, George Cash; that both of these witnesses have had the opportunity to observe the defendant during the period she has been in the Rutherford County Jail since May 22nd, 1987; that upon objection by the State, the Court sustained the offered testimony of Joan Lavender and the witness George Cash as to any opinion as to whether the defendant understands the nature and object of the proceedings against her; as to whether she comprehends her own situation with reference to the proceedings or whether she's able to assist her Counsel in her defense in a rational and reasonable manner; *that for the record,* the Court permitted the witness,

Joan Lavender and George Cash to testify as to their opportunities to observe the defendant and their opinions; that the State offered into evidence the report signed by Dr. Bob Rollins, Forensic Psychiatrist of Dorothea Dix Hospital, as a result of examinations of defendant, who was admitted to Dorothea Dix Hospital on May 26, 1987 and July 17 [sic], 1987; that for the purpose of this hearing, these reports are admitted into evidence and the Court has read and examined each of these reports; that the Court notes that many of the symptoms described by Dr. Rollins in the report submitted by him were the same symptoms described by the witness, Joan Lavender and the witness, George Cash from their observations of the defendant; that the Court notes that in the report dated June 16 [sic] 1987, Dr. Rollins expressed the opinion that the defendant should be considered responsible for her actions on this charge and that another opinion dated July 22 1987 Dr. Rollins expressed the opinion that the defendant remains capable of proceeding to trial.

Based upon the foregoing findings of fact, the Court concludes that the defendant is capable of proceeding to trial; that she is able to understand the nature and object of the proceedings against her, to comprehend her own situation with reference to the proceedings and assist her counsel in a rational and reasonable manner. THE MOTION OF THE DEFENDANT IS DENIED. Exception for the defendant. (Emphasis supplied.)

It is apparent from his ruling that the trial judge relied entirely on Dr. Rollins' written reports and disregarded the testimony of the two lay witnesses. This was error.

The tests to determine a defendant's mental capacity to proceed to trial are found in N.C.G.S. § 15A-1001(a). N.C.G.S. § 15A-1001(a) states:

No person may be tried, convicted, sentenced, or punished for a crime when by reason of mental illness or defect [the person] is unable to understand the nature and object of the proceedings . . . , comprehend [the] situation in reference to the proceedings, or to assist in his [or her] defense in a rational or reasonable manner.

"[T]he new statute clearly sets forth in the disjunctive three tests of mental incapacity to proceed, and the failure to meet any one would suffice to bar criminal proceedings against a defendant." *State v. Jenkins*, 300 N.C. 578, 582-83, 268 S.E. 2d 458, 462 (1980).

N.C.G.S. § 15A-1002 permits the court, or the prosecutor, defense counsel or defendant by motion, to question defendant's competency at any time during the proceedings against defendant. The motion must detail the specific conduct upon which it rests. Upon the motion being made, the court must conduct a hearing to determine defendant's capacity to proceed. The court may in its discretion appoint impartial medical experts to examine defendant or commit defendant to a state mental health facility for up to 60 days for observation, treatment and diagnosis.

According to the Official Commentary to N.C.G.S. §§ 15A-1001-02, the statutes' objective is to ensure that a defendant will not be tried or punished while laboring under the incapacity the statutes describe. "Whether defendant is able to plead to the indictment and conduct a rational defense should be determined prior to the trial of defendant for the crime charged in the indictment." *State v. Propst*, 274 N.C. 62, 69, 161 S.E. 2d 560, 566 (1968). Over 100 years ago this Court noted, "[I]t is most obviously fitting and proper . . . that the defendant's capacity to enter upon a trial . . . should be determined before he is put to trial; for the trial would amount to nothing if the defendant has not the required capacity to defend himself against the charge." *State v. Hayward*, 94 N.C. 847, 854 (1886).

A lay witness may testify, upon a proper foundation, on the issue of a defendant's capacity to stand trial. "A lay witness who has observed, conversed, or dealt with another person and who has had a reasonable opportunity to form an opinion satisfactory to the witness as to that person's mental condition may testify as to the witness's opinion." *State v. Smith*, 310 N.C. 108, 114, 310 S.E. 2d 320, 324 (1984).

In *Smith* the trial court properly sustained an objection to a question posed to defendant's wife that asked whether she had an opinion as to her husband's *capacity to stand trial*. The question improperly asked for a legal conclusion, and witnesses may not testify to legal conclusions. *State v. Weeks*, 322 N.C. 152, 367 S.E. 2d 895 (1988); *State v. Ledford*, 315 N.C. 599, 340 S.E. 2d 309

(1986); *State v. Smith*, 315 N.C. 76, 337 S.E. 2d 833 (1985). Instead, both lay and expert witnesses must testify in terms of the tests set out in N.C.G.S. § 15A-1001(a). For example, both expert and lay witnesses may, with proper foundation, give opinions as to whether defendant is able to understand the nature and object of the proceedings, or comprehend his or her own situation in reference to the proceedings, or assist in his or her defense in a rational and reasonable way. *State v. Smith*, 310 N.C. 108, 310 S.E. 2d 320.

Here defendant's witnesses were both asked proper questions after sufficient foundation had been established. Joan Lavender would have, if permitted, testified that after close and repeated observations of defendant she held the opinion that defendant was unable to comprehend what was "going on" and could not assist in her own defense in a rational manner. Sergeant Cash testified for the record that after observing defendant "most every day" after her incarceration, his opinion was that defendant was "not capable" of assisting in her defense.

This testimony should have been admitted and considered by the trial judge on the issue of defendant's capacity to proceed to trial. His failure to consider it constitutes error.

B.

The remaining question is whether the error in excluding this testimony requires that the verdict and judgment be vacated and further proceedings ordered. We hold that it does. The pertinent standards are found in N.C.G.S. § 15A-1443(a), and require us to ask whether, had the evidence not been excluded, there is a reasonable possibility the trial court might have reached a different conclusion in determining defendant's capacity to proceed.

The only evidence offered suggesting defendant was competent to proceed to trial was two reports written by Dr. Rollins some three and five months, respectively, before the hearing. In these reports Dr. Rollins deemed defendant then capable of proceeding to trial. Dr. Rollins did not testify at the October 1987 hearing, and there was no expert testimony regarding defendant's capacity to proceed at that time. There is no evidence Dr. Rollins evaluated defendant's capacity to proceed after his July report or that defendant's condition remained the same from July until the

time of trial. The only evidence introduced of defendant's condition during those months and shortly before trial was the improperly excluded testimony of witnesses Lavender and Cash, both of whom said, essentially, that defendant was unable to understand the proceedings against her and assist in her defense.

For these reasons, we conclude there is a reasonable possibility that had the trial judge properly allowed and considered the testimony of the two lay witnesses, he might have found defendant incompetent to proceed. Accordingly, the verdict and judgment below must be vacated and the case remanded for further proceedings consistent with this opinion.

## III.

[2] Although for the reasons already stated the verdict and judgment below must be vacated and the case remanded for further proceedings, we find it appropriate to consider an assignment of error relating to the trial itself. Defendant argues, and we agree, that Dr. Rollins, called as a witness for defendant, was erroneously permitted to offer legal conclusions during cross-examination by the state. Arguably, had defendant properly objected at trial to this testimony, its admission alone might have required a new trial. Defendant, however, did not object to the testimony. We address the question in the hope that the error will not be repeated in subsequent proceedings.

The defense in this case is insanity. In North Carolina the legal definition of insanity continues to be the *M'Naghten* test, first laid down in *M'Naghten's Case*, 10 Clark & Fin. 200, 210 [8 Eng. Reps. 718, 722] (1843). Our cases state the test as follows: "[A]n accused is legally insane and exempt from criminal responsibility by reason thereof if [the accused] commits an act which would otherwise be punishable as a crime, and at the time of so doing is laboring under such a defect of reason, from disease of the mind, as to be incapable of knowing the nature and quality of the act [the accused] is doing, or, if he [or she] does know this, incapable of distinguishing between right and wrong in relation to such act." *State v. Johnson*, 298 N.C. 47, 65-66, 257 S.E. 2d 597, 612 (1979), *quoting State v. Swink*, 229 N.C. 123, 125, 47 S.E. 2d 852, 853 (1948); *accord, State v. Franks*, 300 N.C. 1, 265 S.E. 2d 177 (1980); *State v. Pagano*, 294 N.C. 729, 242 S.E. 2d 825 (1978); *State v. Thomas*, 294 N.C. 105, 240 S.E. 2d 426 (1978).

In support of her insanity defense defendant first elicited testimony from Dr. Rollins concerning his initial finding in June 1987 that as a result of mental disorders, defendant was unable to distinguish between right and wrong when she killed Connie Davis. On cross-examination Dr. Rollins explained that after forming this opinion, he had learned of a letter defendant had mailed to her boyfriend in which she stated she had gotten "high" on marijuana before killing the victim. Dr. Rollins agreed with the District Attorney that his second report reflected a change of opinion, saying:

> I had been concerned all along about the possible effect of marijuana. One can have a serious mental disorder and still know what they are doing. In North Carolina we still hold people responsible for whatever they do, if they are intoxicated, so it was my thinking that if her condition were made worse by the voluntary use of marijuana then her mental disorder in my opinion wouldn't relieve her of responsibility for whatever she might of done.

The District Attorney capitalized on this testimony in his closing argument to the jury, saying

> there is every indication to assume that it is correct, that if she had been smoking marijuana on that occasion, everything that Dr. Rollins tells you about her not knowing right from wrong goes out the window. Because he said if it comes down to a question of drug intoxication of any type she is responsible under the laws of North Carolina.

We said in *State v. Weeks*, 322 N.C. 152, 164, 367 S.E. 2d 895, 903 (1988), that:

> Testimony by experts is admissible if it will assist the 'trier of fact to understand the evidence or to determine a fact in issue.' N.C.G.S. § 8C-1, Rule 702 (1986). Moreover, an expert may be permitted to give his opinion even though it embraces an ultimate issue to be decided by the trier of fact. *Id.*, Rule 704 (1986). However, it is not error for a trial court to refuse to admit expert testimony embracing a legal conclusion that the expert is not qualified to make.

We held in *Weeks* that an expert's testimony that embraces legal terms of art, the definitions of which are not readily apparent to

the expert, should be excluded because it tends to confuse rather than help the jury in understanding evidence and determining facts in issue. In *State v. Ledford*, 315 N.C. 599, 340 S.E. 2d 309 (1986), the Court held that a doctor, by testifying that trauma injuries were a "proximate cause" of a blood clot that eventually caused death, stated a legal conclusion that should have been excluded. We noted in *Ledford* that "the principle excluding opinions on matters of law 'clearly bars opinion that a criminal defendant is "guilty" . . . .' " *Id.* at 617, 340 S.E. 2d at 321. We have also stated that the

> rule that an expert may not testify that such a particular legal conclusion or standard has or has not been met remains unchanged by the new Evidence Code, at least where the standard is a legal term of art which carries a specific legal meaning not readily apparent to the witness.

*State v. Smith*, 315 N.C. 76, 100, 337 S.E. 2d 833, 849.

Dr. Rollins was improperly permitted to testify about the law of voluntary intoxication in North Carolina and its effect on defendant's insanity defense. He stated: "In North Carolina we still hold people responsible for whatever they do, if they are intoxicated." By this testimony Dr. Rollins offered an interpretation of the law that if defendant were voluntarily intoxicated, she was responsible for her actions even if her underlying mental disorder might otherwise render her legally insane.

Not only was Dr. Rollins improperly permitted to state a legal conclusion regarding the effect of voluntary intoxication on the defense of insanity, but the conclusion he gave, later used by the District Attorney in his closing argument, rests upon a misapprehension of the law. As we noted above, persons who are legally insane are exempt from criminal responsibility. Voluntary intoxication, on the other hand, does not relieve a defendant altogether from criminal responsibility. At most it may negate the element of specific intent in those crimes in which that element must be proved. "In certain instances voluntary drunkenness, while not an excuse for a criminal act, may be sufficient to negate the requisite intent element." *State v. Mash*, 323 N.C. 339, 347, 372 S.E. 2d 532, 537 (1988).

While one who is intoxicated may still be able to form whatever specific intent is required for conviction, *see State v. Hamby*, 276 N.C. 674, 174 S.E. 2d 385 (1970), one may also be intoxicated and due to a mental illness or defect meet the *M'Naghten* test for insanity. Indeed, this Court has held that a criminal defendant producing sufficient supporting evidence may be entitled to jury instructions regarding both the insanity defense and voluntary intoxication. *State v. Propst*, 274 N.C. 62, 161 S.E. 2d 560. The presence of voluntary intoxication does not invalidate an otherwise appropriate insanity defense. Insanity and voluntary intoxication are discrete doctrines that stand, respectively, on separate legal footings. They are not mutually exclusive. They may coexist in the same case and be considered, jointly and severally, by the jury. *Id.*

For the reasons given the verdict and judgment of the trial court are vacated and the matter remanded to the Superior Court, Rutherford County, for further proceedings consistent with this opinion.

Vacated and remanded.