STATE OF NORTH CAROLINA v. YVETTE GAY

No. 363A91

(Filed 10 September 1993)

**1. Appeal and Error § 360 (NCI4th)— record on appeal—denial of motion to add affidavits**

A motion by the State to amend the record on appeal by adding affidavits from the trial judge and the prosecutor

is denied since the Supreme Court will refuse to consider affidavits which are not a part of the record made at trial.

**Am Jur 2d, Appeal and Error §§ 515 et seq.**

2. **Constitutional Law § 342 (NCI4th)— court's communication with prospective jurors—absence of defendant—harmless error**

While it was error for the trial court to address the prospective jurors outside the presence of defendant in this capital trial, the State met its burden of proving that the error was harmless beyond a reasonable doubt where the record affirmatively reveals that the trial judge went to the grand jury room merely to inform the prospective jurors that they were at break under his prior instructions.

**Am Jur 2d, Criminal Law §§ 692 et seq., 901 et seq.**

**Accused's right, under Federal Constitution, to be present at his trial—Supreme Court cases. 25 L. Ed. 2d 931.**

**Validity of jury selection as affected by accused's absence from conducting of procedures for selection and impaneling of final jury panel for specific cases. 33 ALR4th 429.**

3. **Constitutional Law § 342 (NCI4th); Criminal Law § 483 (NCI4th)— bailiff's communications with jury—direction by court—right to be present—no reversible error**

While the shorthand procedure adopted by the trial court in directing the bailiff to communicate on three occasions with venirepersons waiting to be called and on five occasions with the jury itself may run the risk of violating defendant's right to be present, that procedure did not constitute reversible error in this case where the trial court instructed the bailiff on four occasions to inform the jury to take or extend a recess during evidentiary hearings or discussions of legal issues and on the other four occasions to inform the jurors that they were on break and were to continue to abide by earlier instructions; defense counsel approved this shorthand procedure and declined the trial court's offer to be heard on this matter; these communications did not relate to defendant's guilt or innocence and did not implicate defendant's confrontation rights; and defendant's presence would not have been useful to his defense.

**Am Jur 2d, Criminal Law §§ 692 et seq., 901 et seq.; Trial §§ 1000-1004.**

4. **Criminal Law § 793 (NCI4th); Homicide § 396 (NCI4th) — first-degree murder — acting in concert — intent — failure to give requested instruction**

The trial court did not err by failing to give defendant's requested instruction in a prosecution for three first-degree murders that "[w]here a defendant is charged on a theory of acting in concert for crimes requiring a specific intent, that intent must be shown as to each defendant," where the trial court incorporated an acting in concert instruction into each element of the crimes charged; the instructions given by the court clearly required the jury to find that defendant herself, acting either alone or with a codefendant, intended to kill the victims; the instructions also directed the jury that it could consider evidence of defendant's mental condition as it related to the question of intent; and there was nothing contained in the instruction requested by defendant which was not conveyed to the jury through the instructions given by the trial court.

**Am Jur 2d, Homicide §§ 496, 497; Trial § 723.**

5. **Appeal and Error § 504 (NCI4th) — expert testimony — legal term of art — invited error**

Any error in the admission of testimony by defendant's psychiatric expert using the legal term of art "duress" and in the incorporation of the expert's testimony into the closing arguments of both defendant and the prosecution was invited error, and defendant cannot complain of this error on appeal, where defendant herself introduced this testimony, and defendant incorporated the testimony into her closing arguments and did not object to the State's incorporation of the testimony into its closing argument.

**Am Jur 2d, Appeal and Error §§ 713-722.**

6. **Burglary and Unlawful Breakings § 151 (NCI4th) — burglary — intent — requested instruction — inaccurate statement of law**

The trial court did not err by refusing to give defendant's requested instruction that the jury could consider defendant's mental ability in connection with her ability to form "the specific intent to commit burglary" since it was not an accurate statement of the law because the specific intent element of burglary

STATE v. GAY

[334 N.C. 467 (1993)]

relates solely to the intent to commit a felony within the dwelling place.

**Am Jur 2d, Burglary § 69.**

7. **Burglary and Unlawful Breakings § 153 (NCI4th); Homicide § 678 (NCI4th) — diminished capacity — instruction for murder — failure to instruct for burglary — absence of prejudice**

An instruction on the defense of duress will not normally encompass the diminished capacity defense. Assuming that an instruction on diminished capacity as a defense to burglary would have been appropriate in light of the evidence presented in this case, the trial court sufficiently instructed the jury on this defense when it gave a diminished capacity instruction in relation to the charge of first-degree murder since, in order for the jury to convict defendant of burglary, it was required to find that defendant intended to commit the named felony of first-degree murder at the time of the breaking and entering, and had the jury accepted that defense to the murder charge, it would also have been unable to convict defendant of burglary.

**Am Jur 2d, Burglary § 69; Homicide § 516.**

**Accused's right, in homicide case, to have jury instructed as to both unintentional shooting and self-defense. 15 ALR4th 983.**

8. **Evidence and Witnesses § 2479 (NCI4th) — sequestration order — refusal to except mental health witness — no abuse of discretion**

The trial court did not abuse its discretion by denying defendant's request to have her expert mental health witness view a portion of defendant's testimony because a reciprocal sequestration order had been entered where the motion to sequester witnesses was originally made by defendant; the trial court allowed both sides to except certain persons from the sequestration order; and defendant did not ask at the time the order was entered to have her expert excepted therefrom.

**Am Jur 2d, Trial § 61.**

9. **Burglary and Unlawful Breakings § 165 (NCI4th) — first-degree burglary — felonious intent — failure to submit misdemeanor breaking or entering**

There was no evidence that defendant did not have a felonious intent at the time she broke into and entered the victims' residence so as to require the trial court to submit misdemeanor breaking or entering as a lesser included offense of first-degree burglary where all the evidence showed that defendant and a companion entered the victims' home with the intent to kill the family members residing therein, and the question for the jury was whether defendant did so willingly.

**Am Jur 2d, Burglary § 69.**

10. **Criminal Law § 803 (NCI4th) — lesser included offense — effect of refusing opportunity for instruction**

A defendant may not decline an opportunity for instructions on a lesser included offense and then claim on appeal that failure to instruct on the lesser included offense was error. N.C.G.S. § 15A-1443(c).

**Am Jur 2d, Trial § 876 et seq.**

**Propriety of lesser-included-offense charge to jury in federal criminal case — general principles. 100 ALR Fed. 481.**

**Lesser-related state offense instructions: modern status. 50 ALR4th 1081.**

11. **Criminal Law § 34 (NCI4th); Homicide § 118 (NCI4th) — first-degree murder — testimony showing duress — inadmissibility**

The trial court in a first-degree murder case did not err in striking defendant's testimony that she was "scared" and "frightened" when her companion told her to hold the victims at gunpoint where defense counsel stated that the testimony was offered solely for the purpose of proving duress or coercion, since duress is not a defense to murder, and the testimony was thus not admissible to prove duress.

**Am Jur 2d, Criminal Law § 148.**

**Coercion, compulsion, or duress as defense to criminal prosecution. 40 ALR2d 908.**

12. **Constitutional Law § 182 (NCI4th)— first-degree murder— premeditation and deliberation and felony murder—no double jeopardy**

Defendant's conviction of first-degree murder under theories of accomplice liability based on (1) premeditation and deliberation and (2) felony murder did not violate defendant's right against double jeopardy.

**Am Jur 2d, Criminal Law § 279 et seq.**

13. **Conspiracy § 38 (NCI4th)— conspiracy to commit burglary— sufficiency of evidence**

The evidence was sufficient to support defendant's conviction of a separate conspiracy to commit burglary in addition to conspiracy to commit murder where it tended to show that, weeks before the victims were killed, defendant helped her boyfriend construct a note left at the murder scene; on the evening prior to the murders, the boyfriend told defendant of his intent to kill his wife's family; on the morning of the murders, the boyfriend woke defendant and asked her if she was ready to go; defendant drove with her boyfriend by the house occupied by the wife's family, counted how many lights were on inside, and walked to the house with her boyfriend; and defendant held the firearms while her boyfriend cut the phone lines and broke in the door.

**Am Jur 2d, Conspiracy §§ 29, 30.**

**Criminal conspiracy between spouses. 74 ALR3d 838.**

14. **Homicide § 696 (NCI4th)— felony murder—failure to instruct on duress—duress instruction for underlying felony—no plain error**

The trial court did not commit plain error by failing to instruct the jury on duress as a defense to felony murder predicated upon burglary where the court instructed the jury on duress as a defense to burglary; the jury was instructed that it must find defendant guilty of burglary in order to find her guilty of felony murder predicated upon burglary; and the jury thus could not have found defendant guilty of felony murder had it not found her guilty of burglary due to the defense of duress.

**Am Jur 2d, Homicide § 514.**

STATE v. GAY

[334 N.C. 467 (1993)]

**15. Criminal Law § 680 (NCI4th) — capital case — mitigating circumstances — peremptory instructions**

A trial court should, if requested, give a peremptory instruction for any mitigating circumstance, whether statutory or nonstatutory, if it is supported by uncontroverted evidence.

**Am Jur 2d, Criminal Law § 628.**

**16. Criminal Law § 680 (NCI4th) — capital case — mitigating circumstances — uncontroverted evidence — refusal to give peremptory instructions — prejudicial error**

A defendant sentenced to death for each of three convictions of first-degree murder is entitled to a new sentencing hearing where the trial court refused to give requested peremptory instructions on various nonstatutory mitigating circumstances supported by uncontroverted evidence, and it is impossible to determine what effect this error had on the sentencing decision.

**Am Jur 2d, Criminal Law § 628.**

**17. Criminal Law § 1333 (NCI4th) — capital case — three aggravating circumstances — separate evidence supporting each — required instruction**

The trial court did not err in submitting as aggravating circumstances for first-degree murder that the offense was (1) especially heinous, atrocious, or cruel, (2) committed during a burglary, and (3) part of a course of conduct which included the commission by defendant of other crimes of violence against other persons since there was separate evidence to support each of these aggravating circumstances. However, the trial court should have instructed the jury in such a way as to ensure that jurors would not use the same evidence to find more than one aggravating circumstance.

**Am Jur 2d, Criminal Law §§ 598 et seq.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from three judgments imposing sentences of death entered by Weeks, J., at the 8 July 1991 Criminal Session of Superior Court, Beaufort County. Defendant's motion to bypass the Court of Appeals as to additional judgments allowed by the Supreme Court 24 June 1992. Heard in the Supreme Court 13 January 1993.

*Michael F. Easley, Attorney General, by Debra C. Graves, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Staples Hughes and Janine Crawley, Assistant Appellate Defenders, for defendant-appellant.*

FRYE, Justice.

Defendant Yvette Gay was tried capitally on indictments charging her with the first-degree murders of Louise Farris, Shamika Farris, and William Farris, Jr. (William Jr.); first-degree burglary; conspiracy to commit first-degree burglary and conspiracy to commit murder. The jury returned verdicts finding defendant guilty of all charges. Convictions for the three first-degree murders were based upon the theories of (1) premeditation and deliberation and (2) felony murder. At the capital sentencing proceeding for the first-degree murder convictions, the court submitted three aggravating and twenty-six mitigating circumstances. The sentencing findings were identical in each case and the jury recommended a sentence of death for each first-degree murder conviction. The trial court imposed the death sentences as recommended and imposed additional consecutive sentences of fifteen years, three years, and nine years for the additional convictions. For the reasons discussed herein, we conclude that the guilt phase of defendant's trial was free from prejudicial error. However, we conclude that error occurring in the sentencing phase of defendant's trial requires that she receive a new capital sentencing proceeding in accordance with N.C.G.S. § 15A-2000 (1988).

The State presented evidence tending to show the following. At the time the murders in this case were committed, defendant Yvette Gay was involved in a relationship with Renwick Gibbs (Gibbs) and had been so involved for five or six years. Throughout defendant's relationship with Gibbs, Gibbs was married to Anne Farris (Anne). Gibbs and Anne lived together in a mobile home in Chocowinity during most of their marriage. For about a month prior to the homicides, however, Anne lived in a battered woman's shelter, although during other separations from Gibbs she lived with her parents in the Town of Washington, North Carolina. During the last separation, Gibbs lived with defendant, her two children, and her twin sister, Doris, in a converted bus in Washington.

During this period of separation, on 29 May 1990 at 11:30 p.m., Anne went to her parents' residence in Washington to return their car which she often borrowed. Her father drove her to work and then returned home to bed. The following morning, Mr. Farris awoke at 3:45 a.m. in order to get ready for work. Shortly thereafter he left for work. When Mr. Farris returned to his home shortly after 1:00 p.m., he discovered that his wife and two younger children, William Jr. and Shamika, had been killed.

Gibbs' sister, Deborah Blount, testified that on 30 May 1990 between 9:30 and 10:00 a.m. Gibbs asked her to go with him to town. She declined. At about 11:30 a.m. he again asked her to accompany him to town. She did so. Shortly after noon they drove to the Farris house because Gibbs said he wanted Deborah to talk with Anne. Deborah knocked on the door but no one answered. Gibbs encouraged Deborah to peek inside the window. When she refused, Gibbs stepped out of the car and went to the carport on the side of the house and soon emerged yelling, "My wife, my wife." Deborah could not understand why he was screaming, so she went to the side door and entered the house. She glanced in several rooms before seeing William Jr.'s body and that of a young woman she thought was either Shamika or Anne. Deborah ran to a nearby store and called for the police. Police officers soon arrived. They found the bodies of William Jr., Shamika, and Louise Farris in the house. They had been tied up, gagged, and shot to death. They also found a broken window pane in the carport door and a paper bag, to which cutout magazine letters which read "I told you about slapping my mother" were glued.

SBI Agent Eric Tellefsen testified. that he obtained consent to search Gibbs' trailer on the afternoon that the bodies were discovered. There he found a .22 caliber rifle. The next day police arrested Gibbs for the murders. After his arrest, he directed officers to a location where they found a 30-30 rifle which was used in the murders.

Defendant was questioned and gave detectives several differing statements regarding the events of 29 and 30 May 1990. SBI Agent Malcolm McLeod testified that he interviewed defendant while she was at work on the afternoon the bodies were discovered. McLeod informed her that he was there to verify Gibbs' alibi. She told him that Gibbs had been with her throughout the night at the bus after 12:30 a.m.

Agent Tellefsen testified that on 1 June 1990 defendant gave a different statement to detectives at the Washington Police Station. She said that Gibbs was with her at the bus on the evening of 29 May 1990. After they went to bed, Gibbs woke her up and said he had to go somewhere. He told her he was mad at Anne's people for coming between him and Anne. He took out a rifle, ordered her to get bullets for him from the front of the bus and then left. He returned about 6:30 or 7:00 a.m., left again, returned about 10:00 a.m., and left once again.

When Investigator Taylor asked if it was her or her sister who accompanied Gibbs on the night of the murder, defendant said that it had been her. Defendant then gave the officers another statement. This statement was similar to defendant's testimony at trial in that defendant admitted going with Gibbs to the Farris' home. In her statement to the officers, defendant said that two or three weeks before the murders, Gibbs pasted together a note on a brown paper bag. On the day before the murders, Gibbs shot at and attempted to run over and kill the Farris' dog. On the evening of 29 May 1990 Gibbs told defendant that he was going to kill Anne and her family. Gibbs was angry after talking with Anne who told him to go back to his "new wife," referring to defendant. Gibbs woke defendant up around 4:00 a.m. on 30 May 1990. They dressed themselves in dark clothing and Gibbs placed a stocking over each of their heads. Gibbs asked defendant if she was ready. She hesitated and then said yes. He told her that she did not have to go and that he knew that she was scared and did not want to go. She told him she was ready but was concerned about her asthma. She got her asthma spray and the note he had made. At Gibbs' request, she retrieved the .22 rifle for him. Gibbs already had the 30-30 rifle with him. They drove to the Farris house in defendant's car. Upon reaching the house, they saw Mr. Farris leave in his car. Gibbs followed and attempted to overtake Mr. Farris but failed. Gibbs said, "F--- it, I'm going to kill the bitch," so they returned to the Farris house. They went up to the house where Gibbs cut the phone lines while defendant held the rifles. Gibbs asked defendant twice if she was ready and she said yes. Gibbs then forced entry into the house through the carport door. There were screams as they entered the house. Gibbs pointed the gun at Mrs. Farris and ordered her to take the children into a bedroom. Gibbs became irritated as Mrs. Farris pleaded with him and Shamika cried. Gibbs ordered one of the victims, William

Jr., to tie up the other victims, Shamika and Mrs. Farris. After Gibbs became irritated with William Jr.'s efforts, Gibbs ordered Shamika to tie up Mrs. Farris. Gibbs then tied up William Jr. while defendant held a gun. There was no reference in defendant's statement that she ever spoke to or bound or gagged anyone. At various times, Gibbs walked to the front of the house to check to see if anyone had driven up. At those times, defendant held a gun on the family while he was gone. Eventually, Gibbs ordered defendant to shoot each person in the head. She said that she could not, so he shot and killed the three victims. Gibbs and defendant went back to the bus, washed up, and put some of their clothing in a paper bag which Gibbs took with him when he drove defendant's twin sister to work. He returned, slept a bit, then left to find Anne.

At trial, defendant's testimony as to the events differed somewhat from this statement. Defendant testified that she was twenty-seven years old at the time of the murders. She was one of six children but she had little contact with any of her family except her twin sister because Gibbs did not want her to have contact with them. She described her relationship with Gibbs as that of boyfriend and girlfriend, except that she was constantly afraid of him. He was physically and verbally abusive to her and had threatened her with a gun on the day before the murders after he attempted to kill the Farris' dog. She testified that she helped Gibbs with spelling when he made the note which he left at the murder scene.

She testified that when Gibbs returned to the bus on 30 May 1990 at 12:30 a.m. he was angry because Anne had said that defendant was going to be Gibbs' new wife. He began to hit defendant and told her that if she ever left him he would kill her. He then told her he was going to kill the Farris family. He told defendant and her twin sister to wake him up at 4:00 a.m. They did not wake him, but when he woke up he realized he had overslept and got angry and hit both women. He made defendant get dressed and, when she was slow getting his gun for him from his car, he got angry and hit her with the barrel. Defendant told him she did not want to go, but he said that she had to go in order to see what it would be like if she left him. As they approached the Farris house Gibbs was carrying the guns. At one point he made defendant hold the guns after warning her not to try anything. He took the guns back. After he cut the telephone wires he asked

her if she was ready. She said she was not. He angrily told her to get ready because she was going in whether she liked it or not. She was scared he would kill her.

They entered the house and heard screaming voices. Gibbs ordered the family members into one room then ordered William Jr. to tie up his mother and Shamika. Gibbs then tied up William Jr. In response to the pleas by the mother, Gibbs told her that he was tired of her coming between him and his wife. After Gibbs ordered defendant to shoot the victims and she refused, Gibbs shot and killed them. Gibbs then turned the gun on defendant and appeared to pull the trigger. He told her he was going to kill her, her family, and "everybody that I was ever involved with. I'm going to kill all of you and then I'm going to kill myself." They left and returned to the bus where they removed their clothes. Gibbs left after telling defendant that he would kill her or her sister if she did anything. When police questioned her at work, she lied to them because she was afraid of what would happen to her or her sister if she talked to them.

Defendant also testified that both she and her sister gave their paychecks to Gibbs, that he sometimes abused her and failed to provide them with food. At the time of the killings, she had not eaten for two days. Defendant was aware that Gibbs wanted to reunite with Anne but said that she loved him and wanted to marry him and live in the trailer he shared with Anne. Defendant acknowledged that she failed to tell the police of Gibbs' threats to her or of his prior abuse. She testified that she had received medical attention twice as a result of his abuse but had said, as instructed by Gibbs, that she had received the injuries by accident.

Psychiatric expert testimony was offered on defendant's behalf. Dr. Bob Rollins testified that defendant was suffering from "atypical dissociative disorder" at the time of the murders which resulted from domination, mistreatment or abuse. He testified that the disorder might commonly be called "brainwashing." He further testified that her reaction to Gibbs was typical of what is seen in the battered spouse syndrome, although they were not married. As a result of the abuse, the expert believed that defendant was essentially a slave to Gibbs. The expert also testified to defendant's mother's mental problems (paranoid schizophrenia) and that mental health records from April 1989 reported her father's suspicion that defendant was being abused by Gibbs.

STATE v. GAY

[334 N.C. 467 (1993)]

In rebuttal, the State offered evidence that the officers who interrogated defendant at work saw no injuries to her face or body. The jail matron who processed defendant and an emergency room doctor who saw defendant on 5 June 1990 also saw no signs of injury.

At the capital sentencing proceeding, defendant offered the testimony of three women who knew defendant through their jail ministry. All three witnesses testified to their belief in defendant's religious sincerity. A jail matron testified that defendant had adapted well to incarceration. Defendant's mother testified about her own schizophrenia and how defendant had helped with the family while the mother was hospitalized. Defendant's father testified that defendant was a good daughter and had never been any trouble to the family. He testified that he suspected that Gibbs had abused defendant. Defendant's brother testified that defendant had contributed to the family but that she had cut off contact after she moved out. Dr. Rollins reiterated his previous testimony and opined that defendant was susceptible to treatment and rehabilitation.

## JURY SELECTION

Defendant first contends that her constitutional right to be present at all stages of her capital trial was violated because the trial judge engaged in *ex parte* communication with prospective jurors during jury selection. We find no prejudicial error.

We have recognized that the protection of Article I, Section 23 of the North Carolina Constitution "guarantees an accused the right to be present in person at every stage of his trial." *State v. Payne*, 320 N.C. 138, 139, 357 S.E.2d 612, 612 (1987) (*Payne I*) (citing *State v. Moore*, 275 N.C. 198, 208, 166 S.E.2d 652, 659 (1969)), *appeal after remand*, 328 N.C. 377, 402 S.E.2d 582 (1991). We have previously found prejudicial error where a trial judge admonished a jury outside the presence of the defendant. *Payne I*, 320 N.C. at 140, 357 S.E.2d at 613.

In this case the jury selection lasted several days. The procedure used by the trial court involved general questioning of the entire venire by the court, general questioning of a panel of twelve by the State, and then individual death qualification of those twelve by the State. During the individual questioning, the venirepersons who had been seated in the jury box, but who were not being questioned, waited in the jury deliberation room; venirepersons

who had not yet been called to the box waited together in various available rooms in the courthouse, including the grand jury room on the day in question. On the fifth full day of jury selection, the alleged *ex parte* exchange about which defendant now complains occurred.

The record reveals that after the individual questioning of a prospective juror, the trial judge indicated that he thought a recess would be appropriate. The following exchange occurred.

THE COURT: IF YOU WILL, BRING IN THE MEMBERS OF THE JURY PANEL IN THE JURYROOM, MR. SADLER. WITH THE CONSENT OF ALL COUNSEL, I'M SIMPLY GOING TO INFORM THE MEMBERS OF THE JURY IN THE GRAND JURYROOM THAT THEY ARE AT BREAK UNDER THE COURT'S PRIOR INSTRUCTION UNTIL TWENTY-FIVE AFTER. IS THAT SATISFACTORY?

MR. HARRELL [DEFENSE COUNSEL]: YES, SIR, YOUR HONOR.

THE COURT: AGAIN, THANK YOU, MR. EVANS [THE INDIVIDUAL PROSPECTIVE JUROR]. IF YOU WILL, BRING IN THE OTHER MEMBERS OF THIS PANEL.

(THE BAILIFF DID AS REQUESTED.)

(ALL PROSPECTIVE MEMBERS OF THE JURY PANEL WERE PRESENT.)

THE COURT: LADIES AND GENTLEMEN, WE'RE GOING TO TAKE THE MORNING RECESS AT THIS TIME AND GIVE YOU AN OPPOR-TUNITY TO STRETCH YOUR LEGS AND GET SOME REFRESHMENT IF YOU WOULD LIKE TO DO SO. PLEASE REASSEMBLE IN THE SEATS YOU NOW OCCUPY AT TWENTY-FIVE AFTER AND WE WILL CON-TINUE WITH THE MATTER NOW BEFORE US. AND PLEASE RECALL AND ABIDE BY ALL OF MY EARLIER INSTRUCTIONS. EVERYONE ELSE PLEASE REMAIN SEATED. THE MEMBERS OF THE JURY ARE EXCUSED AT THIS TIME UNTIL TWENTY-FIVE AFTER. THANK YOU.

(THE EIGHT PROSPECTIVE JURORS OF THE JURY PANEL RETIRED FROM THE COURT ROOM AT 11:11.)

THE COURT: WE ARE AT EASE UNTIL TWENTY-FIVE AFTER, FOLKS.

Defendant contends that the transcript reveals the trial judge's intention to go into the grand jury room (outside the presence of the defendant) to deliver instructions to the prospective jurors waiting there. Defendant argues that this scenario is identical to

STATE v. GAY

[334 N.C. 467 (1993)]

that which occurred in *Payne I* and thus is governed by that case. The State contends that the transcript reveals that no *ex parte* contact in fact occurred and thus there was no error.

[1] On 11 January 1993, two days before the oral argument of this case on appeal, the State filed a motion to amend the record on appeal in this Court. The motion included affidavits from the trial judge and the lead prosecutor in this case which, if considered, would tend to show that the presiding judge did not communicate with any juror or prospective juror *ex parte* at any time. In opposing the motion, defendant points out that this Court has consistently denied attempts by parties to amend a settled record with affidavits, citing *State v. McCarver*, 329 N.C. 259, 260, 404 S.E.2d 821, 822 (1991) (where this Court refused to allow amendment to the record to include an affidavit made three years after the event). In a supplemental response, defendant raises questions about the accuracy of the affidavits.

The State's motion to amend the record is denied. As we have consistently done in the past, we again refuse to consider affidavits which are not part of the record made at trial. *See State v. Boyd*, 332 N.C. 101, 107, 418 S.E.2d 471, 474 (1992); *McCarver*, 329 N.C. at 260, 404 S.E.2d at 822.

[2] We agree with defendant that the transcript lends support to her contention that the trial judge did in fact go to the grand jury room to instruct the prospective jurors that they were at break. However, we disagree with defendant's contention that *Payne I* requires us to find prejudicial error based on this contact.

In *Payne I* the record showed that at the conclusion of jury selection the trial court instructed the court reporter to "show that I am giving the jury a break and that I am going to administer my admonitions to them in the jury room." *Payne I*, 320 N.C. at 139, 357 S.E.2d at 612. We then observed that "[a]s there is no indication of record to the contrary, we must assume that the trial court caused the record to speak the complete truth in this regard, and that the trial court actually took the steps indicated." *Id.* However, as there was nothing in the record to indicate what admonitions the trial court delivered to the jury outside the presence of the defendant, the State could not meet its burden of proving harmlessness beyond a reasonable doubt. *Id.* at 140, 357 S.E.2d at 613.

In this case, unlike in *Payne I*, the record affirmatively reveals exactly what the trial court intended to say to the prospective jurors. The trial judge did not merely indicate his intention "to administer admonitions" but instead informed the parties that he was going to inform the prospective jurors that they were at break under his prior instructions. There is no indication that anything to the contrary occurred. Again we must assume that the trial court caused the record to speak the complete truth. While it was error for the trial court to address the prospective jurors outside the presence of the defendant, the State has met its burden of proving that the error was harmless beyond a reasonable doubt. *See State v. Willis*, 332 N.C. 151, 173-74, 420 S.E.2d 158, 168 (1992); *State v. Huff*, 325 N.C. 1, 35, 381 S.E.2d 635, 654 (1989), *sentence vacated*, 497 U.S. 1021, 111 L. Ed. 2d 770 (1990), *on remand*, 328 N.C. 532, 402 S.E.2d 577 (1991).

[3] The defendant also argues that the trial court improperly directed the bailiff to communicate on three occasions with venirepersons waiting to be called and on five occasions with the jury itself. On four of the eight occasions, the trial court instructed the bailiff to inform the jury to take or extend a recess during evidentiary hearings or discussions of legal issues. On the other four occasions, the trial court instructed the bailiff to inform the jurors they were on break and they were to continue to abide by his earlier instructions. The transcript reveals that defense counsel approved of this shorthand procedure and declined the trial court's offer to be heard on the matter.

We observe initially that it would be unreasonable to hold that bailiffs may have no contact with the jury. In carrying out their custodial duties bailiffs must necessarily engage in some contact with the jury or prospective jurors. While a bailiff certainly may not attempt to instruct jurors as to the law, a simple reminder by the bailiff to the jurors that they are to abide by the court's earlier instructions should not be considered an instruction as to the law. Communications such as these do not relate to defendant's guilt or innocence. The subject matter of these communications "in no way implicates defendant's confrontation rights, nor would defendant's presence have been useful to his defense." *State v. Buchanan*, 330 N.C. 202, 223-24, 410 S.E.2d 832, 844-45 (1991). This is demonstrated by the fact that defendant's attorney had no objection to the shorthand procedure. While we believe that shorthand procedures, such as the one instituted by the trial court in this

case, may run the risk of violating defendant's right to be present, we do not find reversible error on these facts.

## GUILT PHASE

**[4]** By another assignment of error, defendant complains that the trial court erred by failing to give a requested jury instruction. Defendant contends that failure to give the instruction was error because the instruction was proper in law, supported by the evidence and was not completely communicated by instructions given by the court. *See State v. Earnhardt*, 307 N.C. 62, 70, 296 S.E.2d 649, 654 (1982). We reject this assignment of error.

Defendant requested that the following jury instruction be given at trial: "Where a defendant is charged on a theory of acting in concert for crimes requiring a specific intent, that intent must be shown as to each defendant." Rather than give the requested instruction, the trial court incorporated an acting in concert instruction into each element of the crimes charged. For example, the trial court instructed the jury on the elements of premeditated and deliberate murder, in relevant part, as follows:

> FIRST, THE STATE MUST PROVE BEYOND A REASONABLE DOUBT THAT THE DEFENDANT, YVETTE GAY, ACTING EITHER BY HERSELF OR ACTING TOGETHER WITH RENWICK GIBBS, INTENTIONALLY AND WITH MALICE KILLED THE VICTIM IN EACH CASE WITH A DEADLY WEAPON.
>
> . . . .
>
> AND THIRD, THE STATE MUST PROVE BEYOND A REASONABLE DOUBT THAT THE DEFENDANT, YVETTE GAY, ACTING EITHER BY HERSELF OR ACTING TOGETHER WITH RENWICK GIBBS, INTENDED TO KILL THE VICTIM.
>
> . . . .
>
> AND, MEMBERS OF THE JURY, I AGAIN INSTRUCT YOU THAT YOU MAY CONSIDER THE EVIDENCE IN THIS CASE AS IT RELATES TO THE DEFENDANT, YVETTE GAY'S, MENTAL CONDITION AS IT BEARS ON THE QUESTION OF INTENT.

Defendant argues that the jury instructions given by the trial court on the principle of acting in concert, the offense of burglary, the offense of felony murder, and the offense of premeditated and

STATE v. GAY

[334 N.C. 467 (1993)]

deliberate murder were fundamentally flawed.[1] She contends that the instructions as given did not require jurors to reach the question of whether the defendant herself intended to commit murder when she entered the Farris' home, or ever formed the specific intent to kill necessary to commit premeditated and deliberate murder, contrary to the requirements of *State v. Reese*, 319 N.C. 110, 141, 353 S.E.2d 352, 370 (1987). Thus, defendant argues, failure to give the requested instruction was error. We disagree.

In *Reese*, we observed that "[o]ne who is actually or constructively present, aids, abets, incites, or otherwise acts in concert with a perpetrator is held guilty as a principal as long as he has the requisite *mens rea.*" *Id.*[2] We believe the instructions reproduced above are in accord with this observation.

The instructions given by the trial court clearly required the jury to find that the defendant herself, acting either alone or with Gibbs, intended to kill the victims. Not only did the instructions require the jury to evaluate whether defendant possessed the requisite intent, they directed the jury further that it could consider the evidence of defendant's mental condition as it related to the question of intent. There was nothing contained in the instruction requested by the defendant which was not conveyed to the jury through the instructions given by the trial court. We reject defendant's argument since, assuming *arguendo* that defendant was entitled to the requested instruction, the instructions given by the trial court essentially complied with defendant's request. *See State v. Bonney*, 329 N.C. 61, 79, 405 S.E.2d 145, 155 (1991).

[5] By another assignment of error, defendant argues that the reliability of the verdicts of guilt was unconstitutionally impaired by the testimony of her expert witness and by the court's failure to prevent counsel on both sides from relying on this testimony in closing arguments. We reject this assignment of error.

The expert testimony now complained of was offered by defendant's own expert witness in regard to defendant's mental condi-

---

1. As her argument in regard to the instructions for each offense is based on the same complaint and as the trial court incorporated the acting in concert instruction into each element of the crimes charged, we will address the assignment of error only as it relates to the offense of premeditated and deliberate murder for purposes of this discussion.

2. For a statement of the law of acting in concert, see this Court's recent opinion in *State v. Harvell*, 334 N.C. 356, 364, 432 S.E.2d 125, 129 (1993).

tion. The expert used the word "duress" at various times in his description of defendant's relationship with Gibbs. The core of defendant's complaint is that the expert testimony intermingled the separate defenses of duress and diminished capacity, which confused the jury and undermined both defenses. Defendant contends that the likelihood that the jury was confused by the misleading testimony was increased by incorporation of the expert's testimony into both the defendant's and prosecution's closing arguments. Defendant cites *State v. Silvers*, 323 N.C. 646, 655, 374 S.E.2d 858, 864 (1989), in support of her argument that this testimony should have been excluded. The State argues that this issue is not properly before us for review since defendant attributes no misstatement of law to the trial judge nor does she claim ineffective assistance of counsel.

We have held that "an expert's testimony that embraces legal terms of art, the definitions of which are not readily apparent to the expert, should be excluded because it tends to confuse rather than help the jury in understanding evidence and determining facts in issue." *Id.* at 656-57, 374 S.E.2d at 865 (citing *State v. Weeks*, 322 N.C. 152, 164, 367 S.E.2d 895, 903 (1988)). While we agree with defendant that the term "duress" may be a legal term of art, the definition of which was not readily apparent to defendant's expert witness, we nevertheless reject this assignment of error. Defendant herself introduced this testimony. She incorporated the testimony into her closing arguments and did not object to the State's incorporation of the testimony into its closing. A defendant may not complain of prejudice "resulting from [her] own conduct." N.C.G.S. § 15A-1443(c) (1988). Such "invited error" does not merit relief. *See State v. Rivers*, 324 N.C. 573, 575-76, 380 S.E.2d 359, 360 (1989); *State v. Greene*, 324 N.C. 1, 12, 376 S.E.2d 430, 438 (1989), *sentence vacated*, 494 U.S. 1022, 108 L. Ed. 2d 603 (1990), *on remand*, 329 N.C. 771, 408 S.E.2d 185 (1991). *See also Silvers*, 323 N.C. at 655, 374 S.E.2d at 864 (defendant did not object to improper expert testimony offered during cross-examination, thus error in its admission was not reversible).

[6] By another assignment of error, defendant complains about the trial court's failure to give the following requested instruction: "You may consider the Defendant's mental ability in connection with her ability to freely, voluntarily, and independently form the specific intent to commit burglary." We find no error.

At the charge conference the following exchange occurred concerning whether the trial court should give the requested instruction.

COURT: WHY DOES THE DURESS INSTRUCTION NOT COVER THAT?

MR. HARRELL [DEFENSE COUNSEL]: WELL I THINK ARGUABLY THAT THAT PROBABLY DOES. THIS JUST FOCUSES ON THE ACTUAL INTENT ITSELF, ON THE MENTAL ABILITY TO FORM THAT INTENT. I THINK ARGUABLY DURESS DOES AND COERCION DOES COVER THAT.

The requested instruction was not given.

Defendant argues that it was error for the trial court not to give this requested instruction since the instruction was legally correct and supported by the evidence. *See State v. Earnhardt*, 307 N.C. 62, 70, 296 S.E.2d 649, 654. The State argues that the trial court did not err in refusing to give the requested instruction since it was legally flawed. The State also argues that the request was effectively withdrawn by defense counsel's agreement that the duress instruction was sufficient. In addition, the State argues that the trial court's instruction that the jury could consider defendant's mental condition as to her ability to form the intent to commit murder was sufficient to provide the diminished capacity defense to burglary, since intent to commit murder was an element of the burglary charge.

We find no error in the trial court's failure to give the requested instruction. We begin by observing that defendant has waived her right to review of this issue by failing to object to the trial court's omission of the requested instruction. Rule 10(b)(2), N.C. R. App. P. 10(b)(2). *See also Earnhardt*, 307 N.C. at 70-71, 296 S.E.2d at 654-55.

In any event, the trial court was not required to give the requested instruction since it was not an accurate statement of the law. The requested instruction related to defendant's ability to form "the specific intent to commit burglary" while the specific intent element of burglary relates solely to the intent to commit a felony within the dwelling place. *See State v. Kyle*, 333 N.C. 687, 694, 430 S.E.2d 412, 416 (1993). Thus, it was not error for the trial court to refuse to give the requested instruction which was legally flawed.

[7] We observe however, contrary to the apparent agreement between the trial court and defense counsel, that an instruction

on the defense of duress will not normally encompass the diminished capacity defense. As separate defenses, they demand separate instructions. *See State v. Strickland,* 307 N.C. 274, 297, 298 S.E.2d 645, 660 (1983) (duress is an affirmative defense which defendant must prove to the satisfaction of the jury), *modified in part by State v. Johnson,* 317 N.C. 193, 344 S.E.2d 775 (1986); *State v. Shank,* 322 N.C. 243, 250, 367 S.E.2d 639, 644 (1988) (for diminished capacity defense, the jury need only have a reasonable doubt as to defendant's ability to form the requisite intent to commit the offense with which she is charged to negate an element of the offense).

However, failure of the trial court to instruct the jury on the separate defense of diminished capacity was not reversible error in this case. On the burglary charge, defendant was indicted for breaking and entering the named dwelling with the intent to commit the felony of first-degree murder. In order for the jury to convict defendant of burglary, it was necessary for the jury to find that defendant intended to commit the named felony — murder — at the time of the breaking and entering. Assuming that an instruction on diminished capacity as a defense to burglary would have been appropriate in light of the evidence presented, the trial court sufficiently instructed the jury on this defense since it gave a diminished capacity instruction in relation to the charge of first-degree murder. The jury did not accept that defense. However, had the jury accepted that defense, it would have been unable to convict defendant of burglary as well. Thus failure to charge on diminished capacity as a defense to the burglary charge could not have been prejudicial to defendant. We believe the trial court met its "obligation to fully instruct the jury on all substantial and essential features of the case embraced within the issue and arising on the evidence." *State v. Harris,* 306 N.C. 724, 727, 295 S.E.2d 391, 393 (1982). Thus we reject this assignment of error.

[8] Defendant next argues that the trial court erred by denying her motion to have her expert mental health witness view a portion of defendant's testimony. Because of a reciprocal sequestration order, the trial court refused defendant's request. Defendant objected. Defendant argues that the trial court's decision was made without reason and therefore was an abuse of discretion. We disagree.

A trial court has discretion in a criminal case to sequester witnesses. N.C.G.S. § 15A-1226 (1988). *See also State v. Stanley,* 310 N.C. 353, 357, 312 S.E.2d 482, 485 (1984). A ruling within the

trial court's discretion should be reversed only upon a showing that the ruling could not have been the result of a reasoned decision. *Stanley*, 310 N.C. at 357, 312 S.E.2d at 485.

In this case, the original sequestration motion was made by defendant to sequester the State's witnesses. The trial court advised defendant that if it were inclined to allow the motion, it would make the motion reciprocal and allow certain exceptions for each side. After some discussion, the State excepted three key law enforcement officials and members of the victim's family from the sequestration order. Defendant excepted defendant's mother, father and brother from the sequestration order. Defendant did not request to have her expert excepted from the ruling. At trial, defendant requested that her mental health expert be allowed to be present in the courtroom during cross-examination of defendant. The trial court denied defendant's motion, indicating its reluctance to change the prior sequestration order entered in the case.

This decision was not an abuse of discretion. The trial court heard arguments from both sides on the issue and observed that the motion to sequester witnesses was originally made by defendant. Defense counsel acknowledged during arguments that the presence of the expert in the courtroom during defendant's testimony could change the expert's opinion. While an expert may properly base his or her opinion upon facts observed at trial, *see* N.C.G.S. § 8C-703 (1992), the trial court did not abuse its discretion in sequestering the witness in accordance with its earlier ruling in this case. We reject this assignment of error.

[9] In another assignment of error, defendant contends that the trial court erred by failing to submit misdemeanor breaking or entering as a lesser included offense of first-degree burglary. Defendant argues that failure of the court to do so was error because there was evidence that defendant did not have a felonious intent at the time she and Gibbs broke into and entered the Farris residence. We find no error.

Defendant is correct that where "there is evidence from which the jury could find that the defendant committed a lesser included offense, the judge must charge on that lesser included offense." *State v. Ferrell*, 300 N.C. 157, 163, 265 S.E.2d 210, 214 (1980).

Common law burglary is defined as the breaking and entering of a dwelling house of another in the nighttime with the

intent to commit a felony therein. *State v. Cooper*, 288 N.C. 496, 219 S.E.2d 45 (1975). Burglary in the first degree occurs when the crime is committed while the dwelling house or sleeping apartment is actually occupied by any person. N.C.G.S. § 14-51 (1981). If at the time of a breaking and entering a person does not possess the intent to commit a felony therein, he may only properly be convicted of misdemeanor breaking or entering. *State v. Peacock*, 313 N.C. 554, 330 S.E.2d 190 (1985).

*State v. Williams*, 314 N.C. 337, 355, 333 S.E.2d 708, 720 (1985).

Failure to instruct on the lesser included offense of misdemeanor breaking or entering was not error in this case because there was no evidence to support the lesser charge. The evidence presented in this case showed that defendant and Gibbs entered the Farris' home with the intention to kill the family members. The question for the jury was whether defendant did so willingly. If so, she was guilty of burglary. If the jury found that she did not, she would have been entitled to a not guilty verdict. Thus, failure to instruct on the lesser included offense was not error.

[10] In addition, we observe that a defendant may not decline an opportunity for instructions on a lesser included offense and then claim on appeal that failure to instruct on the lesser included offense was error. N.C.G.S. § 15A-1443(c) (1988). *See also State v. Williams*, 333 N.C. 719, 728, 430 S.E.2d 888, 893 (1993). In this case the trial court specifically asked defense counsel if there were any lesser included offenses as to the first-degree burglary charge. Defense counsel responded, "[n]ot based on the evidence, I don't think so your honor." Thus, defendant foreclosed any inclination of the trial court to instruct on the lesser included offense and is not entitled to any relief on appeal. *Id.*

[11] Defendant next contends that the trial court erred by sustaining the prosecutor's objection to her testimony that she was "scared" and "frightened" when Gibbs told her to hold the Farris family at gunpoint. Defendant argues that this evidence, while inadmissible to establish duress as a defense to murder, was admissible as it related to defendant's intent at the time of the killing. She argues that evidence showing her fear of Gibbs would tend to make it less probable that she acted with a premeditated and deliberate intent to kill and thus should have been admitted.

On direct examination, defendant responded that she was "[s]cared, frightened" when Gibbs told her to hold the Farris family at gunpoint. The State objected and moved to strike this testimony. The trial court held a bench conference on the State's motion and the following exchange occurred:

COURT: IS THIS BEING OFFERED TO ESTABLISH DURESS OR COERCION?

DEFENSE COUNSEL: YES, SIR.

COURT: IS IT BEING OFFERED FOR ANY OTHER REASON?

DEFENSE COUNSEL: NO, SIR

COURT: THEN THE MOTION TO STRIKE WILL BE ALLOWED.

As defendant acknowledges, duress is not a defense to murder. *See Strickland*, 307 N.C. at 295, 298 S.E.2d at 659. The transcript reveals that the testimony of defendant's fear was being offered solely for the purpose of proving duress or coercion. While the testimony may have been admissible for some other purpose at this juncture, it was not admissible to prove duress or coercion as a defense to murder. *See id.* Thus, the trial court did not err by granting the State's motion to strike the testimony after learning defendant's purpose in offering the testimony.

[12] By another assignment of error, defendant contends that submission of the offense of felony murder to the jury violated the constitutional prohibition against double jeopardy. Defendant argues that although the two theories of accomplice liability under which she was convicted of first-degree murder do not violate double jeopardy under the test set forth in *United States v. Blockburger*, 284 U.S. 299, 304, 76 L. Ed. 306, 309 (1932), this Court should find that they do violate the more flexible test announced in *Grady v. Corbin*, 495 U.S. 508, 510, 109 L. Ed. 2d 548, 557 (1990). We decline to do so since the test announced in *Grady* has been rejected by the United States Supreme Court. *U.S. v. Dixon*, --- U.S. ---, 125 L. Ed. 2d 556 (1993).

[13] In another assignment of error defendant contends that her conviction for conspiracy to commit burglary must be set aside for insufficiency of evidence. Defendant concedes that there is sufficient evidence for her conviction for conspiracy to commit murder to stand, however, she argues that the evidence does not show that defendant either explicitly or implicitly agreed to burglarize

the Farris' home. We disagree. A criminal conspiracy is an express or implied "agreement between two or more people to do an unlawful act or to do a lawful act in an unlawful way." *State v. Bell*, 311 N.C. 131, 140, 316 S.E.2d 611, 617 (1984). The criminal act is complete upon agreement. *State v. Arnold*, 329 N.C. 128, 142, 404 S.E.2d 822, 831 (1991). In this case, the evidence when viewed in the light most favorable to the State shows that weeks before the murders defendant helped Gibbs construct the note left at the murder scene. This involvement evidenced the conspiracy to commit murder. At the time defendant entered into this conspiracy, it was a nonspecific plan. Nonetheless, the conspiracy to commit murder was complete weeks before the murders occurred. The evidence also shows a separate implied agreement to burglarize the Farris' home entered into on the morning of the murders. On the evening of 29 May 1990, Gibbs told defendant of his intent to kill Anne's family. On the morning of 30 May 1990 Gibbs woke defendant and asked her if she was ready to go. Defendant drove with Gibbs by the Farris house, counted how many lights were on inside, walked to the house with Gibbs, held the firearms while Gibbs cut the phone lines and as Gibbs broke in the door. We believe the evidence presented by the State was sufficient to show a separate conspiracy to commit burglary. Thus, we reject this assignment of error.

[14] Next defendant argues that the trial court committed plain error by failing to instruct the jury on duress as a defense to felony murder. She argues that since duress is a defense to burglary, the trial court should have instructed the jury that duress is also a defense to felony murder predicated upon burglary where defendant did not actually commit the murder and only participated in the underlying felony in order to save her own life. We find no plain error.

The jury was instructed in this case that duress is a defense to burglary.[3] The jury rejected this defense. The jury was also instructed that they must find defendant guilty of burglary in order to find her guilty of felony murder predicated upon burglary. The

---

3. The State contends that defendant was arguably not even entitled to an instruction on duress as a defense to burglary since duress is not a defense to murder and the intent to commit murder provided the felonious intent for the burglary conviction. The jury did not accept duress as a defense to burglary. Thus, we need not address the State's contentions as this issue is not before us.

STATE v. GAY

[334 N.C. 467 (1993)]

jury could not have found defendant guilty of felony murder had they found her not guilty of burglary due to the defense of duress. We believe the jury was adequately instructed on the law in this regard. We therefore reject this assignment of error.

Defendant brings forward several additional issues "with the request that the Court grant relief on them and, if this Court declines to do so, to preserve them in the event of later review. *See Engle v. Isaac*, 456 U.S. 107, 71 L. Ed. 2d 783 (1982)." To the extent the arguments in these preservation issues relate to the guilt phase of defendant's trial, they are rejected without prejudice to any rights defendant may have to seek further relief in the United States Supreme Court.

SENTENCING PHASE

Defendant also contends that several errors occurred at the capital sentencing proceeding which require that she receive a new sentencing proceeding. We find merit in one of her assignments of error and order a new sentencing proceeding on that basis. Aside from one other sentencing issue, we need not address the other errors complained of as they may not be repeated at the new sentencing proceeding.

At sentencing, defendant submitted a written request for peremptory instructions on all mitigating circumstances. The trial court gave a peremptory instruction on the mitigating circumstance of the defendant's lack of criminal history but did not give a peremptory instruction on other mitigating circumstances which were supported by uncontroverted evidence. Defendant argues, and we agree, that the trial court erred in this regard. Because it is impossible for us to determine the effect of this error on the sentencing decision, defendant is entitled to a new sentencing proceeding for her convictions for the three first-degree murders.

"Where . . . all of the evidence in [a capital prosecution], if believed, tends to show that a particular mitigating circumstance does exist, the defendant is entitled to a peremptory instruction on that circumstance." *State v. Johnson*, 298 N.C. 47, 76, 257 S.E.2d 597, 618 (1979). Even if the jury is given a peremptory instruction in regard to a certain mitigating circumstance, the individual jurors may still reject that circumstance on the basis that the supporting evidence was not convincing. *Huff*, 325 N.C. at 59, 381 S.E.2d at 669. In addition, jurors may reject the nonstatutory mitigating circumstance if they do not deem it to have mitigating value. *Id.*;

*State v. Fullwood,* 323 N.C. 371, 396-97, 373 S.E.2d 518, 533-34 (1988) (jurors must determine whether nonstatutory mitigating circumstances have mitigating value), *sentence vacated,* 494 U.S. 1022, 108 L. Ed. 2d 602 (1990), *on remand,* 329 N.C. 233, 404 S.E.2d 842 (1991). However, "[i]f so requested and if defendant is otherwise entitled to it, it will be error for the trial judge not to give [a peremptory instruction]." *Johnson,* 298 N.C. at 77, 257 S.E.2d at 619.

[15]   While the particular mitigating circumstance at issue in *Johnson* was statutory, our decisions have not limited the scope of the rule requiring peremptory instructions only to statutory mitigating circumstances. *Huff,* 325 N.C. at 59-60, 381 S.E.2d at 669. The method by which a juror finds a statutory or nonstatutory mitigating circumstance differs. Nonetheless, statutory and nonstatutory mitigating circumstances should be presented to the jury in a comparable fashion so as not to denigrate the nonstatutory circumstance. A rule requiring peremptory instructions (where appropriate) only in regard to statutory mitigating circumstances could compromise the potential mitigating value of nonstatutory mitigating circumstances in contravention of the law of this State. *See State v. Cummings,* 326 N.C. 298, 389 S.E.2d 66 (1990) (reversible error where nonstatutory mitigating circumstances were not presented to the jury in writing as were the statutory mitigating circumstances). Thus, a trial court should, if requested, give a peremptory instruction for any mitigating circumstance, whether statutory or nonstatutory, if it is supported by uncontroverted evidence. *See Johnson,* 298 N.C. at 77, 257 S.E.2d at 619.

[16]   At the sentencing proceeding in this case, defendant presented uncontroverted evidence supporting several nonstatutory mitigating circumstances which were submitted to the jury.[4] Of those non-

---

4. The State does not challenge that the following nonstatutory mitigating circumstances were supported by uncontroverted evidence at the sentencing proceeding: defendant admitted her involvement at an early stage in the proceedings, and/or cooperated with law enforcement officers; defendant has no prior history of violent behavior; the initial idea for the plan that resulted in the death of the decedent was that of the codefendant, Renwick Gibbs; defendant has shown remorse since her arrest; defendant has demonstrated ability to get along well in the circumstance of incarceration as is evident by her good report from Beaufort County Jail; defendant has accepted Christ as her Lord and Saviour; defendant lived in a bus at the time of the crime; defendant completed high school; defendant aided her family financially while gainfully employed; defendant has provided counselling and witness to others while incarcerated; defendant experienced repeated violence in the form of verbal abuse, physical abuse, sexual abuse and emotional abuse.

statutory mitigating circumstances, some were not found by any juror while others were found by one or more jurors. It is possible that one or more of the nonstatutory mitigating circumstances found by none of the jurors would have been found by one or more of the jurors had the judge given a peremptory instruction as requested. In regard to the nonstatutory mitigating circumstances which were found by one or more jurors, we have no way of knowing whether or not they were unanimously found. If one was not unanimously found, it is possible that more jurors, or all the jurors, would have found the circumstance to exist and to have mitigating value had a peremptory instruction been given.

It is reasonably possible that the number of circumstances found by individual jurors in response to Issue Two at the sentencing proceeding could have had an effect on the balancing required for Issue Three. Therefore we are unable to say that the failure to peremptorily instruct the jury as to the nonstatutory mitigating circumstances which were supported by uncontroverted evidence did not impair the jury's consideration of such circumstances. Accordingly, we are unable to find the error harmless beyond a reasonable doubt. Therefore, defendant must receive a new sentencing proceeding.

[17] Defendant also contends that the trial court erred in submitting three aggravating circumstances which permitted the jury to double count evidence in aggravation. The aggravating circumstances submitted to the jury were: 1) the offense was especially heinous, atrocious, or cruel; 2) the offense was committed during a burglary; and, 3) the murder was part of a course of conduct in which defendant engaged and which included the commission by defendant of other crimes of violence against other persons. Defendant contends that submission of the course of conduct aggravating circumstance was error because the evidence supporting it was duplicative of evidence supporting the burglary aggravating circumstance and the especially heinous, atrocious or cruel aggravating circumstance. Because we conclude there was separate evidence to support each of the aggravating circumstances, we do not find error in the trial court's submission of the three circumstances. See State v. Jennings, 333 N.C. 579, 627-28, 430 S.E.2d 188, 213-14 (1993).

We note, however, that the trial court did not instruct the jury that it could not use the same evidence to find any two of

**STATE v. GAY**

[334 N.C. 467 (1993)]

the aggravating circumstances. Defendant did not object to the trial court's failure to instruct the jury accordingly, and no assignment of error relates specifically to this issue although defense counsel attempted to raise the issue at oral argument in this Court. Since the issue may arise at the new sentencing proceeding, we take this opportunity to address it in an effort to clarify the trial court's responsibility to properly instruct the jury regarding evidence it may consider in finding aggravating circumstances.

Defendant is correct that it is improper for the trial court to submit two aggravating circumstances supported by the same evidence. *See State v. Quesinberry*, 319 N.C. 228, 239, 354 S.E.2d 446, 453 (1987) (error to submit both the aggravating circumstances of murder committed for pecuniary gain and murder committed while defendant engaged in commission of a robbery), *sentence vacated*, 494 U.S. 1022, 108 L. Ed. 2d 603 (1990), on remand, 328 N.C. 288, 401 S.E.2d 632 (1991); *State v. Goodman*, 298 N.C. 1, 29, 257 S.E.2d 569, 587 (1979) (error to submit both the aggravating circumstances of murder committed to disrupt or hinder lawful exercise of governmental function or enforcement of laws and murder committed for purpose of avoiding or preventing lawful arrest or effecting escape from custody). The submission of two aggravating circumstances based on the same evidence is improper because it "amount[s] to an unnecessary duplication of the circumstances enumerated in the statute, resulting in an automatic cumulation of aggravating circumstances against the defendant." *Id*. However, where there is separate evidence to support each aggravating circumstance, it is not improper for both of the circumstances to be submitted even though the evidence supporting each may overlap. *Jennings*, 333 N.C. at 628, 430 S.E.2d at 214. The trial court should nonetheless instruct the jury in such a way as to ensure that jurors will not use the same evidence to find more than one aggravating circumstance.

For the reasons stated above, we find no reversible error in the guilt phase of defendant's capital trial. Having found reversible error in the sentencing phase of the trial, we remand this case for a new capital sentencing proceeding in accordance with N.C.G.S. § 15A-2000.

GUILT PHASE, NO ERROR.

SENTENCING PHASE, NEW SENTENCING PROCEEDING.